# EDWARDS ANGELL PALMER & DODGE LLP

919 North Market Street  Wilmington, DE  19801  302.777.7770  *fax* 302.777.7263  eapdlaw.com

Denise Seastone Kraft
302.425.7106
*fax* 888.325.9741
dkraft@eapdlaw.com

October 24, 2006

The Honorable Judge Kent A. Jordan
U.S. District Court for the
District of Delaware
Room 4209, Lockbox 10
844 North King Street
Wilmington, DE  19801

      RE:    *SOITEC SA and SOITEC USA, Inc. v. MEMC Electronic Materials, Inc.*
              No. 05-806 (KAJ)

Dear Judge Jordan:

      We represent Plaintiffs S.O.I.TEC Silicon On Insulator Technologies S.A. and Soitec USA, Inc. (collectively, "Soitec"). The parties and the Court have recognized the sensitivity of the information being exchanged in discovery in this case, and have accordingly entered a protective order assuring that proper safeguards will be in place. (Exhibit A.) Among the provisions of that protective order is a procedure for clearing expert witnesses who are to have access to confidential materials. Exhibit A, ¶19. The parties have met and conferred, but have been unable to reach agreement as to the suitability of defendant MEMC Electronic Materials, Inc.'s ("MEMC") putative expert, Dr. Werner Bergholz. As a consequence, Plaintiffs request pursuant to Paragraph 19 of the Protective Order, that Dr. Bergholz be precluded from access to information covered by the protective order in this case.

      Soitec and MEMC are currently involved in two patent infringement disputes -- one pending in France and the instant case. The French case involves an MEMC patent which allegedly covers the bulk material from which certain portions of Soitec's product, silicon on insulator substrates, are made. The present case before the Court involves an MEMC patent which allegedly covers silicon on insulator substrates made from the bulk material allegedly covered by the French patent. Thus, information about the material used in Soitec's wafers -- much of which is proprietary to Soitec and to third parties -- will be an issue in both proceedings. The French rules of discovery differ from the Federal Rules of Civil Procedure so that material that is discoverable in this U.S. case may not be discoverable in France. For example, because there is no formal discovery process similar to the US system in French patent infringement proceedings, internal Soitec information produced in this case would normally not be available in France. At present, Soitec is readying the production of tens of thousands of documents having hundreds of thousands of pages of largely confidential material that will not be produced in France.

      As MEMC's expert in this case, Dr. Bergholz will have access to all of this information. As MEMC's expert in the French case, Dr. Bergholz took part in a pre-litigation seizure procedure against Soitec and will be advising MEMC and providing opinions to the French court which will significantly overlap the subject matter of this case. As a result, he will be in a position to make use of the confidential US information that he is not entitled to see in the French proceeding. Soitec has no reason to doubt Dr. Bergholz's good faith willingness to adhere to the Protective Order in this, but the best good faith in the world cannot cause Dr. Bergholz to

# EDWARDS ANGELL PALMER & DODGE LLP

The Honorable Judge Kent A. Jordan
October 24, 2006
Page 2

"unlearn" information that he acquires in this proceeding when he addresses identical issues in France. Under these circumstances, Dr. Bergholz should not be given confidential information in this case.

Here, the parties and the Court have agreed that disclosure of confidential information to experts retained in this case is subject to review by the Court in order to assure that the confidentiality of disclosed information will not be compromised. Permitting Dr. Bergholz access to highly confidential information in this litigation would be unfairly prejudicial and cause harm to Soitec in defending its litigation abroad. As a general principle, it is well established that "federal civil discovery may not be used merely to subvert limitations on discovery in another proceeding." *Wilk v. American Medical Assoc.*, 635 F.2d 1295, 1300 (7th Cir. 1980) (citing *Campbell v. Eastland*, 307 F.2d 478 (5th Cir.), cert denied, 371 U.S. 955 (1962)); *see also In re Remington Arms Co., Inc.*, 952 F.2d 1029 (8th Cir. 1991) ("In drafting a protective order for the discovery of trade secrets . . . use of the discovered information should be limited to the particular lawsuit in which it has been shown to be both relevant and necessary to the prosecution of the case.") From this principle, it follows that a litigant has "no right to obtain discovery materials that are privileged or otherwise immune from eventual involuntary discovery in the collateral litigation." *Wilk*, 635 F.2d at 1300 (citing *American Telephone and Telegraph Co. v. Grady*, 594 F.2d 594, 597 (7th Cir.), cert denied, 440 U.S. 971 (1979)). As a result, there is no question that MEMC cannot directly use discovery in this to end-run the French court's rules and procedures. The same reasoning precludes the use of such information by MEMC's expert in the French case, Dr. Bergholz.

Nor can MEMC contend that it is not seeking access to information to aid in its French litigation, or that Dr. Bergholz will mentally segregate the facts that he learns in this case from the facts that he learns in the French proceeding. Dr. Bergholz, once given access to confidential information in this litigation, will have reviewed the information and considered the evidence in formulating his opinions. It will be impossible for him to erase that evidence from his mind and he will inevitably rely on that information -- information which he cannot "unlearn" -- in forming his opinions in the French action.

Courts regularly recognize that difficulties arise when an individual is expected to compartmentalize information and issue protective orders accordingly. In *Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F.Supp. 20, 22 (D. Del. 1988), for example, the Court prohibited disclosure of confidential information to the plaintiff company's president. *Id.* In doing so, the Court emphasized the president's heavy involvement in his company's research and competitive decision-making, and noted the difficulty of having to "distil one's own thoughts from a competitor's thoughts during the course of future…work." *Id.* The risk that the confidential information would be used in an improper way was simply too great to allow disclosure. Likewise, the court in *Litton Indus. v. Chesapeake & Ohio Railway Co.* described the difficulties in policing a protective order when an expert is given access to confidential information. The court noted:

> Like all experts, these individuals, often professors, are regularly called upon for assistance. This is one of the things that make them "experts." But once an expert has digested this confidential information, it is unlikely that the expert will forget. The expert's raison d'etre is to assimilate information in his or her chosen field and formulate that material into various theories. The information obtained from Bay will be added to the expert's repository of other information for possible future use. Even with stern sanctions for unauthorized disclosure, how does one practically police a protective order? If the expert is called upon two years after this litigation to assist a potential competitor in structuring its business, will he

# EDWARDS ANGELL PALMER & DODGE LLP

The Honorable Judge Kent A. Jordan
October 24, 2006
Page 3

> really be able to compartmentalize all he or she has learned and not use any of the information obtained from Bay?

*Litton Indus. v. Chesapeake & Ohio Railway Co..*, 129 F.R.D. 528, 531 (E.D. Wis. 1990) (emphasis added). *Safe Flight* and *Litton Indus.* are analogous to the situation in this case. Once Dr. Bergholz has digested confidential information from the U.S. litigation, he will not forget it. The information will inevitably be used against Soitec even though Dr. Bergholz tries to remove his US expert hat, and don his French expert *chapeau*.

The concern over the misuse of confidential information is seen throughout all areas of litigation and is especially afforded to "technological information in light of the real and serious threat of economic injury attendant with the disclosure of scientific information." *Ares-Serono, Inc. v. Organon International B.V.*, 153 F.R.D. 4, 6 (D. Mass. 1993). Indeed, in *Motorola Inc. v. Interdigital Tech. Corp.*, the court noted that an attorney with access to confidential information who later prosecutes a patent application involving related technology "would have to constantly challenge the origin of every idea, every spark of genius…. The level of introspection required is simply too much to expect, no matter how intelligent, dedicated, or ethical the … attorneys may be." *Motorola Inc.*, No. 93-488-LON, 1994 U.S. Dist. LEXIS 20714, at *14-15 (D. Del. Dec. 19, 1994); *see also Commissariat A L'Energie Atomique v. Dell Computer Corp.*, 2004 U.S. Dist. LEXIS 12782, at *10 (D. Del. May 25, 2004) (upholding a one-year bar on outside counsel's prosecution of *any patent* related to the general subject matter of the patents in issue due to substantial risk of inadvertent disclosure); *Cummins-Allison Corp. v. Glory, Ltd.*, 2003 U.S. Dist. LEXIS 23653, at *23, **34-35 (N.D. Ill. Dec. 31, 2003) (enforcing a one-year bar on prosecutions related to the subject matter of the patents in suit where court found that counsel's role in revising applications constituted competitive decision-making).

Courts often preclude disclosure where "[t]he potential for abuse…[and] the potential for competitive loss is real." *Safe Flight Instrument Corp.*, 682 F.Supp. at 21 (prohibiting disclosure of confidential information to Plaintiff company's President who was actively involved in engineering research); *see also IP Innovation, LLC v. Thomson, Inc.*, 2004 WL 771233 at *3 (S.D. Ind. 2004)(patent infringement suit prohibiting disclosure of confidential information to an expert whose company was involved in the commercialization of intellectual property); *BASF Corp. v. United States*, 321 F.Supp.2d 1373 (Ct. Int'l Trade 2004)(prohibiting disclosure of confidential information to a third party consultant who was also retained as a part-time consultant by a competitor).

Accordingly, the Plaintiffs request that the Court grant Soitec's motion for a protective order and deny Dr. Bergholz access to confidential information in the pending action.

Respectfully,

*/s/ Denise S. Kraft*
Denise Seastone Kraft (Bar No. 2778)

DSK:rrj
Enclosure

cc:   Patricia Smink Rogowski, Esq.