# Edwards Angell Palmer & Dodge LLP

919 North Market Street  Wilmington, DE  19801  302.777.7770  *fax* 302.777.7263  eapdlaw.com

Denise Seastone Kraft
302.425.7106
*fax* 888.325.9741
dkraft@eapdlaw.com

February 5, 2008

The Honorable Mary Pat Thynge
U.S. District Court for the
 District of Delaware
844 North King Street
Wilmington, DE  19801

>Re:  *SOITEC SA and SOITEC USA, Inc. v. MEMC Electronic Materials, Inc.*
>C.A. No. 05-806( GMS) -- MOTION FOR PROTECTIVE ORDER AND TO
>EXCLUDE CONFLICTED EXPERT WITNESS

Dear Judge Thynge:

     This case involves the claims of U.S. Patent No. 6,236,104 (assigned to MEMC), which purport to cover a type of "silicon on insulator" or "SOI" wafer.  An SOI wafer is a substrate on which microelectronic devices are manufactured.  It has a very thin top layer of silicon in which the microelectronic devices are built (the "device layer"), a layer of insulating material beneath the device layer, and a standard silicon wafer (the "handle" wafer) supporting the two.  The claims at issue purport to cover SOI wafers whose device layers (a) have certain distributions of "intrinsic point defects" and (b) are substantially free of "agglomerated intrinsic point defects."

     On January 14, 2008, as required by the Protective Order in this case, MEMC requested Soitec's permission to disclose Soitec's confidential business and technical information to Dr. George Rozgonyi, a Professor at North Carolina State University.  On January 22, 2008, Soitec objected to such disclosure and MEMC's retention of Dr. Rozgonyi because, months earlier, Dr. Rozgonyi and counsel for Soitec had engaged in substantive discussions about several of Soitec's legal theories of the case.  Soitec's counsel's communications with Dr. Rozgonyi consisted of attorney work product and were reasonably believed by Soitec to be confidential.

     MEMC failed to respond to Soitec's written objection regarding Dr. Rozgonyi.  Accordingly, Soitec now seeks an order from this Court prohibiting MEMC from retaining or otherwise contacting Dr. Rozgonyi with respect to this action.

## A.  BACKGROUND

     As memorialized in the attached correspondence, Brian Gaff, counsel for Soitec, initially telephoned Dr. Rozgonyi at least as early as October 4, 2007, in order to determine whether Dr. Rozgonyi would be suitable and available to assist Soitec with trial preparation.  Exh. A at 1.  During the course of this call, Mr. Gaff explained his purpose in calling, and engaged in a detailed discussion with Dr. Rozgonyi concerning the issues in this case and Soitec's legal strategy on certain of those issues.  Mr. Gaff then sent Dr. Rozgonyi a copy of the '104 patent with instructions concerning key areas of focus in the specification of that patent.  *Id.*  After

WLM 512490.1

BOSTON | FT. LAUDERDALE | HARTFORD | NEW YORK | PROVIDENCE | SHORT HILLS | STAMFORD | WEST PALM BEACH | WILMINGTON | LONDON

EDWARDS ANGELL PALMER & DODGE LLP

Honorable Mary Pat Thynge
February 5, 2008
Page 2

receiving the patent and Mr. Gaff's instructions, Dr. Rozgonyi indicated that he could likely assist in "demonstrating how weak the MEMC position is." *Id.*

On October 11, 2007, Mr. Michael Brody and Mr. George Neuner, both counsel for Soitec, had a lengthy telephone conference (approximately one hour) with Dr. Rozgonyi concerning the '104 patent. During that telephone conference, counsel for Soitec discussed Soitec's position regarding at least one claim term as well as Soitec's legal strategy regarding one or more defenses arising under 35 U.S.C. §112. During that conference, Dr. Rozgonyi again provided preliminary opinions that were favorable of Soitec's legal strategy.

Dr. Rozgonyi, however, did voice some concern about representing Soitec against MEMC due to his former role as Director of Silicon Wafer Engineering and Defect Science ("SiWEDS"), a National Science Foundation cooperative between academic institutions, including Dr. Rozgonyi's university, and industry members, including Soitec and MEMC. Dr. Rozgonyi indicated that if he felt uncomfortable proceeding with a consulting role for Soitec, he would provide Soitec's counsel with references for a conflict-free expert. On November 7, 2007, Dr. Rozgonyi wrote an email to Mr. Gaff stating: "Just wrote an e-mail suggesting other people, etc., but they are just not the best match for this task, so I trashed it. It will come back to haunt me, I fear, but if you make me an offer I can't refuse, I will try to help." Exh. A at 6. Dr. Rozgonyi also provided Mr. Gaff with his billing rates for work on the case. Exh. A at 8. Soitec did not make Dr. Rozgonyi "an offer that [he could]n't refuse" and, on January 6, 2008, Dr. Rozgonyi again contacted Mr. Gaff. This time, Dr. Rozgonyi informed Mr. Gaff that due to "a reevaluation of my relationships with both MEMC and SOITEC, I find it would be best if I did not proceed any further with advising or representing SOITEC on their patent dispute with MEMC." Exh. A at 14. Eight days later, MEMC sent the notice that gave rise to this motion.

The foregoing communications between Dr. Rozgonyi and Soitec's counsel were conducted on the understanding that they were confidential. Dr. Rozgonyi himself went out of his way during discussions with Mr. Brody and Mr. Neuner to make it clear that he, too, wanted the discussions kept confidential. He specifically asked that Soitec not make any public disclosure of his role in the case until he could resolve what he viewed as potential conflict issues and, failing resolution of those issues, he asked that Soitec consider retaining an alternative candidate who he would propose in order to keep his discussions with Soitec from becoming public.

**B.   ARGUMENT.**

No party should be concerned about an expert switching sides in the middle of litigation. *Cordy v. Sherwin Williams Co.,* 156 F.R.D. 575, 582 (D.N.J. 1994) ("Any party to a lawsuit who retains an expert should not have to worry that the expert will change sides in the middle of the proceeding. To hold otherwise would adversely affect the confidence parties place in the system of justice."). A court will disqualify an expert based on a prior relationship with a party if: 1) it was objectively reasonable for the moving party to believe that a confidential relationship existed, and 2) the moving party can establish that confidential information was disclosed to the expert by the first party. *Stencel v. Fairchild Corp.,* 174 F. Supp.2d 1080, 1083 (C.D. Cal. 2001); *Wang Labs., Inc. v. Toshiba Corp.,* 762 F. Supp. 1246, 1248 (E.D. Va. 1991). "The

WLM 512490.1

EDWARDS ANGELL PALMER&DODGE LLP

Honorable Mary Pat Thynge
February 5, 2008
Page 3

emphasis ... is not on whether the expert was retained per se but whether there was a relationship that would permit the litigant reasonably to expect that any communications would be maintained in confidence." *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp.2d 1087, 1093 (N.D. Cal. 2004) (citing *In re Ambassador Group, Inc., Litigation*, 879 F. Supp. 237, 243 (E.D.N.Y. 1994)). *See also Hewlett-Packard Co.* at 1094 (noting that a "'confidential relationship can exist absent a confidentiality agreement between the retaining party and the expert'") (quoting *Pinal Creek Group v. Newmont Mining Corp.*, 312 F. Supp.2d 1212, 1223 (D. Ariz. 2004)).

In this case, MEMC should be precluded from using Dr. Rozgonyi for any purpose in this litigation. Indeed, due to the confidential relationship that previously existed between Soitec and Dr. Rozgonyi, MEMC, including its counsel, should be prohibited from engaging in any further *ex parte* contact with Dr. Rozgonyi until the conclusion of this litigation. The law is clear that where one party has entered into a confidential relationship with an expert concerning the substance of a pending action, any opposing party cannot subsequently retain that expert for use in the same action. Here, the facts show that Soitec revealed information to Dr. Rozgonyi concerning Soitec's legal strategy in this action on multiple occasions, and it did so under circumstances that both Soitec and Dr. Rozgonyi understood to import an obligation of confidentiality. Dr. Rozgonyi made a preliminary review of the patent and provided Soitec with favorable preliminary opinions concerning Soitec's legal strategies. Thus, MEMC is seeking to retain an expert to whom Soitec disclosed confidential work product when Soitec had, at that time, an objectively reasonable belief in the confidentiality of its communication of that work product. MEMC should not be allowed to do so, and Soitec's motion for a protective order should be granted.

Respectfully,

*/s/ Denise Seastone Kraft*

Denise Seastone Kraft (#2778)

DSK:dal

cc:   Patricia Smink Rogowski, Esq. (*by e-filing*)
      Clerk of the Court (*by hand*)

WLM 512490.1