**CONNOLLY BOVE LODGE & HUTZ LLP**

ATTORNEYS AT LAW

WILMINGTON, DE

The Nemours Building
1007 North Orange St.
P.O. Box 2207
Wilmington, DE 19899
TEL: (302) 658 9141
FAX: (302) 658 5614
WEB: www.cblh.com

**Patricia Smink Rogowski**
Partner
Admitted in DE and PA
TEL (302) 658 9141
FAX (302) 658 5614
EMAIL progowski@cblh.com
REPLY TO Wilmington Office

February 12, 2008

**By E-File**
The Honorable Mary Pat Thynge, Magistrate Judge
U.S. District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801

Re:  *SOITEC SA* and *SOITEC USA, Inc. v. MEMC Electronic Materials, Inc.*
    D. Delaware No. 05-806 (GMS)

Dear Judge Thynge:

MEMC requests that the Court deny Soitec's disqualification motion. Soitec's limited contact with Dr. Rozgonyi does not justify the drastic measure requested by Soitec.

I.    **Dr. Rozgonyi's Limited Contact With Soitec's Attorneys**

In total, Soitec's contacts with Dr. George Rozgonyi consist of two telephone calls and a few brief emails, most of which were attached to Soitec's Motion as Exhibit 1. Dr. Rozgonyi was first contacted by Soitec's counsel on October 4, 2007. During that first conversation, Brian Gaff, an attorney for Soitec, inquired whether Dr. Rozgonyi would be interested in working as an expert for Soitec in this lawsuit. He also provided Dr. Rozgonyi with a general description of the issues in the case and investigated Dr. Rozgonyi's areas of expertise. Shortly thereafter, Mr. Gaff supplied Dr. Rozgonyi with a copy of the '104 patent and also brought to his attention the definitions section of the patent specification. Rozgonyi Decl. (Ex. A), ¶2.

On October 11, Dr. Rozgonyi was again contacted by Soitec's counsel. Having read the '104 patent, Dr. Rozgonyi was able to share his initial impressions and opinions of the '104 patent. Dr. Rozgonyi made it clear that he was hesitant to work as an expert for Soitec due to his involvement with a project known as SiWEDS. After this conversation, Dr. Rozgonyi again exchanged a number of emails with Brian Gaff in which Soitec agreed to Dr. Rozgonyi's standard consulting rates, should they proceed. Dr. Rozgonyi was never asked to sign a confidentiality agreement, and was never retained by Soitec. Ex. A at ¶¶3-7.

On January 8, 2008, Dr. Rozgonyi notified Mr. Gaff that he had decided against working with Soitec on the lawsuit. Dr. Rozgonyi was then retained by MEMC. Pursuant to

The Honorable Mary Pat Thynge, Magistrate Judge
February 12, 2008
Page 2

the Protective Order, MEMC sent Soitec Dr. Rozgonyi's CV and signed Non-Disclosure Agreement. After receiving this information, Mr. Gaff notified Dr. Rozgonyi that he had been given confidential information that he now had a duty to protect. Soitec's attorneys requested a telephone conference with Dr. Rozgonyi to explain his "ongoing responsibilities" with regard to the confidential information that Soitec claimed to have *already* disclosed. Dr. Rozgonyi replied to that email describing the nature of his prior communications with Soitec: "I gave you my preliminary understanding of some materials science issues embedded in the patent. It was a rather one way conversation with me doing most of the talking." Ex. B. Dr. Rozgonyi also explained that he had not agreed to be an expert for Soitec, and noted that he was unaware of any "specific proprietary issue." Ex. B.

## II.   Argument

As an initial matter, Soitec has not alleged that it has any reason to believe that Dr. Rozgonyi would improperly use Soitec's "Confidential Information" or "Attorneys' Eyes Only Information," as these terms are defined in the Protective Order. Soitec also has not alleged that there is any reason to believe Dr. Rozgonyi will not faithfully abide by the terms of the Non-Disclosure Agreement, which he signed on January 8, 2008. Ex. C. Thus, Soitec's present motion is not based on the Protective Order, but instead is a motion to disqualify Dr. Rozgonyi based on limited, preliminary conversations he had with Soitec's attorneys.

It is well established that "disqualification is a drastic measure that courts should impose only hesitantly, reluctantly, and rarely." *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004); *See also Koch Refining Co. v. Jennifer L. Boudreau M/V*, 85 F.3d 1178, 1181 (5th Cir. 1996). As a result, Soitec has the burden to prove that disqualification is necessary. *Koch*, 85 F.3d at 1181. That means Soitec must prove that it was objectively reasonable for it to believe that a confidential relationship existed, and that confidential information was actually passed on to Dr. Rozgonyi after that confidential relationship came into being. *Hewlett-Packard*, 330 F. Supp. 2d at 1093. In addition, Soitec must prove that disqualification will not affect MEMC's access to expert witnesses who possess specialized knowledge in the field. *Koch*, 85 F.3d at 1183.

Soitec has engaged in nothing more than informal consultation with Dr. Rozgonyi which courts have repeatedly found insufficient to substantiate a reasonable belief that a confidential relationship has been formed. *Koch*, 85 F.3d at 1182. Evidence militating against Soitec's assertion that a confidential relationship existed include: the infrequency of interaction between the parties, the lack of a retainer or any other signed confidentiality agreement, the fact that Dr. Rozgonyi was not asked to provide any services, and that he was never remunerated for his time. *Id.* Courts have associated these types of fleeting interactions with an informal relationship; one that does not aid Soitec in proving the reasonableness of its alleged belief that confidentiality existed. *Hewlett-Packard*, 330 F.Supp.2d at 1093.

Courts have also found that a confidential relationship is not created simply because some information concerning the litigation is shared with an expert. *Hewlett-Packard*, 330 F. Supp. 2d at 1094. *See also Larson v. Rourick*, 284 F. Supp. 2d 1155, 1158 (N.D. Iowa 2003)

The Honorable Mary Pat Thynge, Magistrate Judge
February 12, 2008
Page 3

("To get to the point where an attorney expert is comfortable proceeding to the step of reviewing factual information, the plaintiffs' counsel must necessarily review certain basic facts and theories concerning the litigation."). The fundamental facts and issues of the case that Soitec argues created a confidential relationship are the types of information that an attorney must discuss with potential experts to determine whether their knowledge is relevant to the case. It is imprudent to assume that a confidential relationship is created every time an attorney performs an initial screening with an expert.

Soitec has also failed to meet its burden of showing that the information it disclosed was confidential. The party moving for disqualification has the duty to "point to specific and unambiguous disclosures that if revealed would prejudice the party." *Hewlett-Packard*, 330 F. Supp. 2d at 1094. Soitec relies on email correspondence and the vague assertion that it discussed "at least one claim term" and "one or more defenses arising under 35 U.S.C. § 112" to meet its burden. There is nothing confidential contained in the emails attached to Soitec's motion. Soitec's argument is also undercut by the fact that its answers to MEMC's interrogatories are broader in scope and contain a much more detailed disclosure of Soitec's defense theories than that which it now asserts is confidential. Ex. A at ¶6; Ex. D. Having failed to point to specific and unambiguous disclosures of confidential information to Dr. Rozgonyi, Soitec cannot meet its burden with "mere conclusory or *ipse dixit* assertions." *Greene v. DuPont Dow Elastomers, L.L.C.*, 202 F.R.D. 426, 429 (E.D. Pa. 2001).

The limited number of experts in the relevant field also militates against Dr. Rozgonyi's disqualification. Courts agree that if experts were regularly disqualified for engaging in the type of communication that Dr. Rozgonyi has with Soitec here, "lawyers could then disable potentially troublesome experts merely by retaining them, without intending to use them as consultants." *Wang Laboratories, Inc. v. Toshiba Corp.*, 762 F. Supp. 2d 1246, 1248 (E.D.Va. 1991). The Court in *Wang* recognized that "[l]awyers using this ploy are not seeking expert help with their case; instead, they are attempting only to prevent opposing lawyers from obtaining an expert. This is not a legitimate use of experts, and courts should not countenance it by employing the disqualification sanction in aid of it." *Id*.

The *Koch* decision instructs that Courts should also consider "whether another expert is available and whether the opposing party [has] time to hire him or her before trial." *Koch*, 85 F.3d at 1183. The reality is that the subject matter of this case is highly specialized and as a result there are few people sufficiently knowledgeable to be characterized as experts in the field. Soitec had already retained several experts when it contacted Dr. Rozgonyi. Soitec has not justified the drastic measure of disqualification based on its preliminary conversations with Dr. Rozgonyi.

The Honorable Mary Pat Thynge, Magistrate Judge
February 12, 2008
Page 4

Respectfully,

*Patricia S Rogowski*

Patricia Smink Rogowski

PSR/lmc
Enclosures
cc:   Denise Seastone Kraft, Esq. (By e-mail attachment)
      Robert M. Evans, Jr., Esq. (By e-mail attachment)
      Marc VanderTuig, Esq. (By e-mail attachment)
      George Neuner, Esq. (By e-mail attachment)
      Michael Brody, Esq. (By e-mail attachment)
587417v1(CB)