# CONNOLLY BOVE LODGE & HUTZ LLP

### ATTORNEYS AT LAW

WILMINGTON, DE

The Nemours Building
1007 North Orange St.
P.O. Box 2207
Wilmington, DE 19899
TEL: (302) 658 9141
FAX: (302) 658 5614
WEB: www.cblh.com

Patricia Smink Rogowski
Partner
Admitted in DE and PA
TEL (302) 658 9141
FAX (302) 658 5614
EMAIL progowski@cblh.com
REPLY TO Wilmington Office

February 12, 2008

**By E-File**
The Honorable Mary Pat Thynge, Magistrate Judge
U.S. District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801

Re:    ***SOITEC SA and SOITEC USA, Inc. v. MEMC Electronic Materials, Inc.***
       D. Delaware No. 05-806 (GMS)

Dear Judge Thynge:

Soitec has requested the Court to order MEMC to produce (1) a report prepared by an MEMC employee at the request of MEMC's attorneys, relating to scientific testing conducted on the silicon wafers seized during the French litigation pending between the parties and (2) MEMC's attorney client privileged invention disclosure and attorney client privileged conversations relating to the conception of the invention claimed in the '104 patent. Because MEMC has not waived its work product or attorney client privilege protections, MEMC requests that the Court deny Soitec's motion.

1.    **Silicon Wafer Test Report on Soitec's Silicon Wafers**

Documents prepared by MEMC employees at the request of MEMC's attorneys for pending litigation are attorney work product. As a general rule, Soitec is not entitled to this information: "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative…." Fed. R. Civ. P. 26(b)(3)(A). Therefore, MEMC need not produce its work product to Soitec unless Soitec "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).

First, Soitec provides no basis for its argument—which is undermined by the plain language of the governing rule—that these materials cannot qualify for work product protection because they were prepared by a non-attorney. In addition, Soitec's argument that MEMC did not include this report on its privileged document log is incorrect. MEMC logged the document at issue as #97 on its privileged document log.

Second, Soitec cannot show that it "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Indeed, Soitec already has test data from the quality control testing that it conducts on these donor wafers as

WILMINGTON, DE                              WASHINGTON, DC                              LOS ANGELES, CA

The Honorable Mary Pat Thynge, Magistrate Judge
February 12, 2008
Page 2

well as quality control data that it receives from its silicon wafer suppliers. And Soitec could also easily conduct its own further testing of these wafers, which are in Soitec's possession. In fact, Soitec does not try to show that it is entitled to production of this information under Rule 26(b). Instead, Soitec argues that MEMC waived its work product protection by alluding to the test results, addressed in the report at issue, in an interrogatory answer.

Soitec's alternative argument—that MEMC waived its work product protections in the report now sought by Soitec—is unpersuasive. MEMC has already agreed to produce the raw test data alluded to by MEMC in response to Soitec's interrogatory, under the condition that Soitec agreed that this production would not constitute a waiver. Work product waivers are narrowly tailored. *In re Seagate Technology, LLC*, 497 F.3d 1360, 1376 (Fed. Cir. 2007). Therefore, to the extent there was any waiver with regard to MEMC's work product protections as a result of MEMC's interrogatory response, the scope of the waiver would only encompass the test data alluded to in MEMC's interrogatory response, which MEMC has already agreed to produce. The scope of any arguable waiver would not include the opinions and conclusions, concerning this data, expressed in the report.

Finally, this report, document number 97 on MEMC's privileged document log, is also protected by the attorney client privilege. Soitec cannot show that MEMC waived its attorney client privilege with respect to this attorney client communication, simply by alluding to the underlying test results in an interrogatory response.

## 2.    MEMC's Invention Disclosure and Related Testimony

In its complaint, Soitec accuses MEMC of inequitable conduct based on Soitec's allegations that its CEO is a co-inventor of the '104 patent: "SOITEC is informed and believes that Auberton-Hervé's co-inventorship of the purported inventions claimed in the '104 Patent was knowingly withheld from the PTO in order to avoid giving SOITEC an ownership interest in the '104 Patent...." In an effort to substantiate its unsupported fraud allegations, Soitec now asks the Court for free rein to explore MEMC's attorney client communications relating to inventorship made during the preparation and prosecution of the patent application that issued as the '104 patent.

Specifically, Soitec seeks the production of MEMC's invention disclosure relating to the '104 patent and testimony concerning communications between MEMC's sole inventor, Robert Falster, and MEMC's outside patent attorney, Edward Hejlek, occurring during the preparation and prosecution of the '104 patent, concerning inventorship. As the sole inventor of the '104 patent, Dr. Falster is the one witness with firsthand knowledge of all the events surrounding his conception. And Soitec has had a full opportunity to depose Dr. Falster on this topic. MEMC's counsel only instructed Dr. Falster not to divulge conversations Dr. Falster had with his patent attorney during the preparation and prosecution of the '104 patent. Falster Dep. at 134:5-135:4.

The Federal Circuit has described invention disclosures as "standard forms generally used by corporations as a means for inventors to disclose to the corporation's patent attorneys that an invention has been made and to initiate patent action." *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 802 n.2 (Fed. Cir. 2000). The Federal Circuit has unequivocally held that invention disclosures are protected by the attorney client privilege. *Id.* at 805-806. Soitec does not dispute that

The Honorable Mary Pat Thynge, Magistrate Judge
February 12, 2008
Page 3

MEMC's invention disclosure is privileged. Instead, Soitec alleges that MEMC waived its privilege: (1) by producing a *different* invention disclosure concerning a *different* patent involved in a *different* lawsuit and (2) during the deposition of the patent attorney who prosecuted the '104 patent. Neither argument has merit.

MEMC first produced the 1995 invention disclosure during a prior lawsuit, relating to a separate patent, not at issue here. Although the '104 patent specification contains some similar language to that patent, the patents are unrelated in terms of priority. Any arguable waiver resulting from MEMC's disclosure of the 1995 invention in the prior litigation would be limited in scope to the subject matter of that disclosure—the circumstances of the perfect silicon invention. The 1995 invention disclosure does not encompass the subject matter at issue here—communications between MEMC and its patent attorney regarding the invention claimed in the '104 patent. And SUMCO cites no authority for the proposition that production of an invention disclosure waives a patent owner's attorney client privilege in all other invention disclosures for separate patents that contain some overlapping specification language.

During deposition, Soitec's counsel elicited some testimony from MEMC's patent attorney, Edward Hejlek, concerning communications he had with Dr. Falster *after the '104 patent had issued*. Mr. Hejlek testified that, sometime after the '104 patent issued, Soitec began making allegations in the market concerning inventorship of the '104 patent. Hejlek Dep. at 150:20-151:9 (attached as Ex. A). At that time, Mr. Hejlek had a conversation with Dr. Falster about Soitec's allegations and Dr. Falster's conception of the invention claimed in the '104 patent. All of the communications described by Mr. Hejlek occurred after the '104 patent issued. In fact, Hejlek expressly testified that Dr. Falster did *not* discuss with him the events surrounding conception of the invention claimed in the '104 patent during prosecution. Ex. A at 149:12-150:15. The communications described by Mr. Hejlek have no bearing on what was communicated between MEMC and its counsel before the '104 patent issued on any topic, including conception. Thus, any possible waiver resulting from Mr. Hejlek's testimony would not extend to communications made by MEMC to its counsel during preparation and prosecution of the '104 patent.

Soitec alleges that MEMC is "taking advantage" of Soitec "by selectively disclosing otherwise privileged communications." Soitec bases this allegation on the testimony it pried from Mr. Hejlek in the deposition discussed above. Given that Mr. Hejlek's second-hand account of the events surrounding Dr. Falster's invention is inadmissible hearsay and too late to be relevant to Soitec's inequitable conduct allegations, Soitec's allegations ring quite hollow. *Teleglobe Communications Corp. v. BCE Inc.*, 493 F.3d 345, 361 (3rd Cir. 2007) ("courts do not imply a broader waiver than necessary to ensure that all parties are treated fairly….when the disclosure does not create an unfair advantage, courts typically limit the waiver to the communications actually disclosed").

The Honorable Mary Pat Thynge, Magistrate Judge
February 12, 2008
Page 4

Respectfully,

Patricia Smink Rogowski

PSR/lmc
Enclosure
cc:    Denise Seastone Kraft, Esq. (By e-mail attachment)
       Robert M. Evans, Jr., Esq. (By e-mail attachment)
       Marc VanderTuig, Esq. (By e-mail attachment)
       George Neuner, Esq. (By e-mail attachment)
       Michael Brody, Esq. (By e-mail attachment)

591832v1(CB)