# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| S.O.I.TEC SILCON ON INSULATOR TECHNOLOGIES S.A. and SOITEC USA, Inc., | ) ) ) ) Case No. 1:05-cv-00806-GMS-MPT |
| Plaintiffs, | ) ) |
| v. | ) ) |
| MEMC ELECTRONIC MATERIALS, INC., | ) ) ) ) |
| Defendant. | ) |

MEMC'S OBJECTIONS TO MAGISTRATE THYNGE'S MARCH 13, 2008 ORDER

CONNOLLY BOVE LODGE & HUTZ LLP
Paul E. Crawford (I.D. #493)
Patricia S. Rogowski (I.D. #2632)
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141
(302) 658-5614 (Fax)
pcrawford@cblh.com
progowski@cblh.com

OF COUNSEL:
SENNIGER POWERS LLP
Robert M. Evans, Jr. (Pro Hac Vice)
David W. Harlan (Pro Hac Vice)
Marc W. Vander Tuig (Pro Hac Vice)
Richard L. Brophy (Pro Hac Vice)
One Metropolitan Square, 16th Floor
St. Louis, MO 63102
(314) 231-5400
(314) 231-4342 (Fax)

Dated: March 27, 2008                    Attorneys for MEMC Electronic Materials, Inc.

I.   **BACKGROUND**

Soitec filed this declaratory judgment action on November 21, 2005.  MEMC filed infringement counterclaims, seeking relief for Soitec's infringement of U.S. Patent No. 6,236,104.  This case was originally assigned to Judge Jordan and referred to Magistrate Thynge for discovery.  Magistrate Thynge also oversaw mediation in this case on November 29, 2006.  The case was reassigned to Judge Sleet on February 1, 2008.  Judge Sleet ordered that all pending case deadlines be rescinded on February 7, 2008.  D.I. 105.

Soitec moved to compel discovery of MEMC's work product and attorney client privileged communications relating to two issues.  After receiving letter briefs from the parties, Magistrate Thynge held a hearing on February 28, 2008.  On March 13, 2008, Magistrate Thynge issued a written order, finding that MEMC waived its work product and attorney client privilege protections and compelling MEMC to produce documents and deposition testimony.  D.I. 114.  MEMC objects to Magistrate Thynge's Order, as contrary to the controlling law regarding waiver of the attorney client privilege and work product protections.

    A.    **Discovery Dispute Relating to MEMC's Invention Disclosure and Communications between MEMC's Inventor and MEMC's Patent Counsel**

MEMC objects to Magistrate Thynge's Order compelling MEMC to produce:  (a) MEMC's privileged invention disclosure for the '104 patent and (b) deposition testimony from MEMC's inventor and MEMC's outside patent attorney about conversations they had relating to conception of the invention claimed in the '104 patent.

Among Soitec's numerous defenses pled in this case is its allegation that its CEO, Dr. André Jacques Auberton-Hervé, co-invented the invention claimed in the '104 patent with Dr. Robert Falster, a MEMC scientist who is the sole named inventor on the '104 patent. As set forth in Soitec's complaint, Soitec bases this co-inventorship allegation on a meeting that occurred between representatives of Soitec and MEMC in October of 1996:

> On October 30, 1996, Auberton-Hervé and Falster, together with a number of other employees of SOITEC and MEMC, met to discuss how to address the HF defect problem. During the course of the meeting, Falster and Auberton-Hervé jointly conceived the idea of making silicon on insulator structures comprising a handle wafer, an Agglomerate Free Device Layer, and an insulating layer between the handle wafer and the device layer.

Soitec's First Amended Complaint (D.I. 33), ¶31.

As explained in MEMC's interrogatory responses, MEMC disputes Soitec's co-inventorship allegations because Dr. Falster fully conceived of this invention prior the October 1996 meeting relied upon by Soitec:

> Dr. Robert Falster conceived of the invention covered by claims 1 and 9 prior to a meeting with Soitec on October 30, 1996. Dr. Falster had previously conceived and reduced to practice a CZ silicon wafer containing an axially symmetric region substantially free of agglomerated intrinsic point defects where the predominant intrinsic point defect was interstitial. Dr. Falster believed such a wafer would provide better performance than the wafers then used by the integrated circuit industry. In advance of his meeting with Soitec on October 30, 1996, Dr. Falster knew that Soitec's primary product at that time was the SOI product. Dr. Falster conceived of using his CZ silicon wafer as the donor wafer to provide the device layer in the Soitec SOI product prior to this meeting.

Exh. 1, pp. 6-7.

Soitec has been provided a full opportunity to investigate the facts supporting MEMC's conception of the claimed invention. In particular, Soitec has taken the deposition of Dr. Falster and explored the topic of conception at length. The only subject

3

matter that Soitec was not permitted to explore during Dr. Falster's deposition was his attorney client privileged conversations with MEMC's patent attorney, Edward J. Hejlek. Exh. 2 at 134:5-135:4.

Soitec also took a 30(b)(6) deposition of Senniger Powers LLP, MEMC's outside patent counsel, and MEMC, for which Mr. Hejlek was the designated witness for certain topics. In particular, Mr. Hejlek was designated to testify about the following topics:

On behalf of MEMC:

6. The prosecution of United States Provisional Patent Application Serial No. 60/098,902 and the prosecution of any US or foreign patent application relating to the same subject matter as the '902 application or claiming priority to the '902 application, including without limitation, United States Patent Application Serial No. 09/387,288, which issued as United States Patent No. 6,236,104. (Collectively the "SOI Applications".)

7. The prosecution of United States Provisional Patent Application Serial No. 60/041,845 and the prosecution of any US or foreign patent application relating to the same subject matter as the '845 application or claiming priority to the '845 application, including without limitation, United States Patent Application Serial No. 09/057,851, which issued as United States Patent No. 5,919,302. (Collectively, the "Bulk Silicon Applications".)

11. Any allegations that any claim of United States Patent No. 6,236,104 is invalid.

12. Any allegations that any claim of United States Patent No. 6,236,104 is unenforceable.

On behalf of Senniger Powers:

Mr. Hejlek was designated for all topics on Exhibit B to Soitec's notice (Exhibit 3 hereto), *except for the following*:

6. The contribution of Robert A. Falster to each invention claimed in United States Patent No. 6,236,104.

> 7. The contribution of each named inventor to each invention claimed in United States Patent No. 5,919,302.

As to these topics, Senniger Powers explained that it would not be providing a witness because the MEMC inventors were in the best position to testify about these topics. Exh. 4 at 12:16-14:18; Exh. 5.

Notwithstanding the fact that Mr. Hejlek was not designated as a 30(b)(6) witness to testify concerning the facts relating to conception, Soitec's counsel questioned Mr. Hejlek about this topic. And during the course of Mr. Hejlek's deposition, Soitec's counsel elicited some testimony concerning communications he had with Dr. Falster after the '104 patent had issued. Mr. Hejlek testified that, sometime after the '104 patent issued, Soitec began making allegations in the market concerning inventorship of the '104 patent. Exh. 4 at 150:20-151:9. At that time, Mr. Hejlek had a conversation with Dr. Falster about Soitec's allegations and Dr. Falster's conception of the invention claimed in the '104 patent. All of the communications described by Mr. Hejlek occurred after the '104 patent issued. In fact, Mr. Hejlek expressly testified that Dr. Falster did *not* discuss with him the events surrounding conception of the invention claimed in the '104 patent during prosecution. Exh. 4 at 149:12-150:15.

MEMC produced a 1995 invention disclosure in a separate lawsuit in which Soitec was not involved. This 1995 invention disclosure relates to separate patents that are not at issue in this lawsuit. Although the '104 patent specification shares some of the same disclosure as the patents related to the 1995 invention disclosure, the patents are unrelated in terms of priority.

Soitec moved to compel testimony from Dr. Falster and Mr. Hejlek about conversations they had relating to conception, including any legal advice given by Mr.

5

Hejlek to Dr. Falster or MEMC. Soitec also moved to compel production of MEMC's invention disclosure relating to the '104 patent. Before Magistrate Thynge, Soitec did not dispute that the invention disclosure and the testimony at issue were protected by the attorney client privilege. Instead, Soitec argued that it was entitled to this information because MEMC impliedly waived its attorney client privilege with respect to subject of Dr. Falster's conception of the invention claimed in the '104 patent.

Soitec based its implied waiver argument on two alleged disclosures of privileged information: (1) MEMC's production of the 1995 invention disclosure, relating to different patents, in the separate lawsuit and (2) the testimony Soitec's counsel elicited from MEMC's outside patent counsel during deposition. Magistrate Thynge concluded that MEMC had waived its attorney client privilege with respect to conception and ordered MEMC to produce Mr. Hejlek and Dr. Falster for additional deposition testimony on this subject and produce the invention disclosure for the '104 patent. D.I. 114, ¶ 2.

### B.  Discovery Dispute Relating to MEMC's Pre-filing Investigation

MEMC also objects to Magistrate Thynge's order compelling MEMC to produce a memorandum prepared at the request of MEMC's attorneys for this lawsuit, which related to testing conducted by MEMC as part of its pre-filing investigation.

Soitec's Interrogatory No. 1 sought the basis for MEMC's belief that Soitec's wafers infringe the '104 patent. MEMC responded by reciting the facts uncovered by its pre-filing investigation:

> As for claim 1, the Soitec UNIBOND SOI product has a handle wafer, a device layer and an insulating layer between the handle wafer and the device layer. The device layer is a single crystal silicon device layer which comes from the top layer of a single crystal Czochralski silicon donor wafer ("CZ donor wafer"). The remaining portion of the CZ donor wafer (after it donates the top layer) can be used several times to donate

6

> additional device layers for additional UNIBOND SOI products. Each Soitec UNIBOND SOI product has the circular shape of a conventional silicon wafer. Thus, each device layer has the circular shape of a conventional silicon wafer. Each device layer thus has a central axis through the center of the device layer, a circumferential edge around the periphery of the device layer, and a radius between the center point and the periphery of the device layer. *MEMC obtained samples of Soitec's CZ donor wafers from which the device layers are derived as part of the litigation in France between the parties. Tests of those CZ donor wafers show that they contain a predominant intrinsic point defect. Tests also show that at the center of the CZ donor wafer (which becomes the center of the device layer in the Soitec UNIBOND SOI product) there is an axially symmetric region containing predominantly vacancy intrinsic point defects without any agglomerated intrinsic point defects.* As such, this axially symmetric region contains "a predominate intrinsic point defect, which is substantially free of agglomerated intrinsic point defect" within the language of claim 1.

Exh. 1, p. 3 (emphasis added).

Soitec requested that MEMC produce all documents relating to its pre-filing tests. Based upon Soitec's agreement that Soitec would not consider production of the test data to be a waiver, MEMC agreed to produce the raw test data referenced in MEMC's response to Soitec's contention interrogatory.[1] Soitec also sought discovery of a memorandum—prepared by a MEMC employee at the request of MEMC's counsel—that summarized and drew conclusions from this test data. MEMC refused to produce this document and logged it as #97 on its privileged document log. Exh. 6, p. 12 (claiming protections under the attorney client privilege and work product doctrine).

Based solely on MEMC's interrogatory response quoted above, Soitec argued that MEMC waived its work product protection in this report. When MEMC refused to produce this report, Soitec moved to compel. At the hearing, Magistrate Thynge concluded that MEMC's interrogatory response constituted a limited waiver of MEMC's

---

[1] During the hearing, MEMC also agreed to produce the test protocols used to generate this data, subject to this agreement.

7

work product protection. Ex. 7 at 18-34. Magistrate Thynge ordered that MEMC produce the report for *in camera* review, so the Court can determine what portions of the report falls within the scope of the waiver found by Magistrate Thynge. D.I. 114, ¶3.

## II.   OBJECTIONS

### A.   Applicable Law

Under Rule 72(a), a district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). The Court reviews findings of fact for clear error and gives plenary review to matters of law. *Haines v. Liggett Group Inc.*, 975 F.2d 81, 91 (3rd Cir. 1992).

"The attorney client privilege…is the oldest confidential communications privilege known to the common law." *Id.* at 89-90. As such, it is "traditionally deemed worthy of maximum legal protection" and "zealously protected." *Id.* at 90 ("[I]t generally is acknowledged that the attorney-client privilege is so sacred and so compellingly important that the courts must, within their limits, guard it jealously") (citations omitted). This privilege "belongs to the client, and only the client may waive it." *Id.*

If a client discloses a communication to a third party, the privilege is waived as to that communication. *In re Teleglobe Communications Corp.*, 493 F.3d 345, 361 (3rd Cir. 2007). "A harder question is whether the waiver also ends the privilege as to any related but not disclosed communications." *Id.* "In answering this question, [the] touchstone is fairness." *Id.* Therefore, "courts do not imply a broader waiver than necessary to ensure that all parties are treated fairly….when the disclosure does not create an unfair advantage, courts typically limit the waiver to the communications actually disclosed."

*Id*. "When a party discloses a portion of otherwise privileged materials while withholding the rest, the privilege is waived only as to those communications actually disclosed, unless a partial waiver would be unfair to the party's adversary." *Id*. at 378 (citations omitted).

The Federal Circuit has described invention disclosures as "standard forms generally used by corporations as a means for inventors to disclose to the corporation's patent attorneys that an invention has been made and to initiate patent action." *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 802 n.2 (Fed. Cir. 2000). The Federal Circuit has unequivocally held that invention disclosures are protected by the attorney client privilege. *Id*. at 805-806.

"Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative…." Fed. R. Civ. P. 26(b)(3)(A). A party seeking such materials must "show[] that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Work product waivers are narrowly tailored. *In re Seagate Technology, LLC*, 497 F.3d 1360, 1376 (Fed. Cir. 2007).

    **A.    Objections to the Order Requiring MEMC to Produce its Invention Disclosure and Deposition Testimony Concerning Conversations Between Dr. Falster and his Patent Attorney**

Magistrate Thynge misapplied the controlling law in finding that MEMC waived its attorney client privilege based on the testimony it pried from MEMC's patent attorney during deposition. Only MEMC can waive its attorney client privilege. *Haines v. Liggett Group Inc.*, 975 F.2d 81, 90 (3rd Cir. 1992). Mr. Hejlek was only designated to testify on

behalf of MEMC concerning the prosecution of MEMC's patent applications at issue. So the testimony relied on by Soitec was given by Mr. Hejlek in his personal capacity, not as MEMC's representative. Therefore, Mr. Hejlek's testimony cannot form the basis for Magistrate Thynge's finding of a voluntary waiver by MEMC. *Haines*, 975 F.2d at 90 (the privilege "belongs to the client, and only the client may waive it"); *see also In re Grand Jury Proceedings*, 219 F.3d 175, 185 (2nd Cir. 2000) (rejecting a per se rule that an individual's testimony waives a corporation's privilege, even though the testimony at issue was given by the founder, chairman, and controlling stockholder of the corporation).

MEMC, the owner of the privilege, has not voluntarily waived its attorney client privilege. Therefore, Mr. Hejlek's personal testimony on topics outside of the Rule 30(b)(6) designation cannot justify the broad implied waiver found by Magistrate Thynge.

Even if Mr. Hejlek had the capability to waive MEMC's privilege—and assuming, *arguendo*, that Mr. Hejlek's testimony constituted a waiver—the broad implied waiver ordered by Magistrate Thynge is unsupported by the controlling law. "When a party discloses a portion of otherwise privileged materials while withholding the rest, *the privilege is waived only as to those communications actually disclosed, unless a partial waiver would be unfair to the party's adversary.*" *In re Teleglobe Communications Corp.*, 493 F.3d 345, 378 (3rd Cir. 2007) (citations omitted).

Contrary to Soitec's arguments to Magistrate Thynge, MEMC is not taking advantage of Soitec by selectively disclosing otherwise privileged communications relating to conception to MEMC's advantage. *See* D.I. 106, p. 3. The deposition

10

testimony Soitec obtained from Mr. Hejlek, relating to conception, will not result in an unfair advantage to MEMC. As MEMC informed Magistrate Thynge, MEMC will not rely on Mr. Hejlek's testimony to corroborate conception. Indeed, Mr. Hejlek is an incompetent source for such testimony. *See* Fed. R. Evid. 602, 802. As described above, Mr. Hejlek has no personal knowledge of the facts relating to conception of the invention claimed in the '104 patent; all of his knowledge relating to this topic was conveyed to him by Dr. Falster after the '104 patent issued. To remove any doubt as to whether Soitec will be prejudiced, MEMC has attached a proposed stipulation as Exhibit 8. In it, MEMC stipulates that it will not rely on the testimony of Mr. Hejlek to support its position relating to Dr. Falster's conception of the invention claimed in the '104 patent.

MEMC gained no advantage from the inadvertent disclosure that occurred during Mr. Hejlek's deposition. Thus, the scope of any waiver that Soitec argues occurred during Mr. Hejlek's deposition is limited to the testimony already provided. *In re Teleglobe Communications Corp.*, 493 F.3d 345, 361 (3rd Cir. 2007) ("courts do not imply a broader waiver than necessary to ensure that all parties are treated fairly….when the disclosure does not create an unfair advantage, courts typically limit the waiver to the communications actually disclosed").

Any arguable waiver resulting from MEMC's disclosure of the 1995 invention in the prior litigation would be limited to the scope of the subject matter of that disclosure. *Teleglobe*, 493 F.3d at 361. The 1995 invention disclosure does not encompass the subject matter at issue here—communications between MEMC and its patent attorney regarding the invention claimed in the '104 patent. And SUMCO cites no authority for the proposition that production of an invention disclosure waives a patent owner's

attorney client privilege in all other invention disclosures for separate patents with related disclosures. A finding of waiver under these circumstances would have sweeping repercussions for companies with numerous patents in the same field.

The limited disclosures identified by Soitec have not prejudiced Soitec in any manner or given MEMC any advantage in this lawsuit. Again, to remove any doubt regarding potential prejudice, MEMC stipulates that it will not use the 1995 invention disclosure for any purpose in this lawsuit. Exh. 8. Therefore, this situation does not conform to the "sword/shield" scenario where courts—guided by the governing fairness analysis—have found implied waivers broader than the communications actually disclosed.

### B. Objections to the Order Requiring MEMC to Produce a Pre-Filing Investigation Memorandum Prepared at the Request of MEMC's Attorney

Magistrate Thynge incorrectly concluded that MEMC's response to Soitec's contention interrogatory constituted a waiver of MEMC's work product and attorney client privilege protections in the pre-filing investigation memorandum at issue. Documents prepared by MEMC employees at the request of MEMC's attorneys for pending litigation are protected from disclosure under the work product doctrine. As a general rule, Soitec is not entitled to this information. Fed. R. Civ. P. 26(b)(3)(A). Soitec did not argue that "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). And as indicated in MEMC's privilege log, the memorandum at issue was communicated from MEMC to its legal counsel "concerning legal strategy for conducting litigation against Soitec." Exh. 6. Therefore this memorandum is also

protected by the attorney client privilege. Soitec persuaded Magistrate Thynge that MEMC had partially waived its work product and attorney client privilege protections by responding to Soitec's infringement contention interrogatory.

A party does not waive its discovery protections by filing responses to contention interrogatories—even if the information was taken from information or communications that would otherwise be protected from disclosure. *Pfizer Inc. v. Ranbaxy Lab. Ltd.*, 2004 WL 1376586, *1 (D. Del. 2004) (courts do not waive privileges in the common "litigation circumstances in which a client and attorney discuss general information and some of that information makes its way into public filings, such as complaints and answers to interrogatories") (citations omitted). Magistrate Thynge erred in concluding that MEMC's interrogatory responses waived MEMC's work product or attorney client privilege protections.

MEMC relied on the underlying test data in filing its infringement counterclaims. For trial, MEMC will be relying on expert testimony concerning tests conducted on silicon wafers and SOI wafers produced by Soitec during discovery in this case. Soitec will have a full opportunity to probe this evidence during expert depositions. And if Soitec wants to explore the test data MEMC conducted before MEMC filed its counterclaims, Soitec should depose the people who conducted and/or supervised these tests. Soitec is not, however, entitled to work product communications sent between MEMC and its counsel in preparation for this litigation, simply because MEMC referenced the test data in response to Soitec's contention interrogatory. *Id.*

Even assuming, *arguendo*, that MEMC's interrogatory response could constitute a waiver, the memorandum at issue would fall safely outside the scope of any such waiver.

Work product waivers are narrowly tailored. *In re Seagate Technology, LLC*, 497 F.3d 1360, 1376 (Fed. Cir. 2007). MEMC has already agreed to produce the raw test data referenced by MEMC interrogatory response, pursuant to Soitec's agreement that this production would not constitute a waiver. And as MEMC informed Magistrate Thynge, MEMC will not rely on the memorandum at issue—or the test data MEMC has already agreed to produce—to prove its infringement case against Soitec. Again, to emphasize this point, MEMC has included this point in its proposed stipulation. Exh. 8. Therefore, to the extent there was any waiver with regard to MEMC's work product protections as a result of MEMC's interrogatory response, the scope of the waiver would only encompass the test data alluded to in MEMC's interrogatory response, which MEMC has already agreed to produce. Magistrate Thynge clearly erred in finding an implied waiver broad enough to include any portion of the memorandum at issue based on MEMC's interrogatory response.

## III. CONCLUSION

Fairness principles guide the implied waiver analysis. Soitec has not been prejudiced and MEMC has gained no unfair advantage as a result of the disclosures at issue. Magistrate Thynge's order, concluding that MEMC had waived its work product and attorney client privilege protections, was contrary to controlling law and clearly erroneous. MEMC respectfully requests the Court to set aside Magistrate Thynge's March 13, 2008 Order (D.I. 114).

Dated: March 27, 2008  CONNOLLY BOVE LODGE & HUTZ LLP

By: _/s/ **Patricia S. Rogowski**_

Paul E. Crawford (I.D. #493)
Patricia S. Rogowski (I.D. #2632)
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141
(302) 658-5614 (Fax)
pcrawford@cblh.com
progowski@cblh.com

OF COUNSEL:

SENNIGER POWERS LLP
Robert M. Evans, Jr. (Pro Hac Vice)
David W. Harlan (Pro Hac Vice)
Marc W. Vander Tuig (Pro Hac Vice)
Richard L. Brophy (Pro Hac Vice)
One Metropolitan Square
16th Floor
St. Louis, MO 63102
(314) 231-5400
(314) 231-4342 (Fax)

Attorneys for MEMC Electronic Materials, Inc.

# **CERTIFICATE OF SERVICE**

I, Patricia Smink Rogowski, hereby certify that on this 27th day of March, 2008, I electronically filed **MEMC'S OBJECTIONS TO MAGISTRATE THYNGE'S MARCH 13, 2008 ORDER** with the Court Clerk using CM/ECF which will send notification of such filing(s) to John L. Reed.

| **VIA CM/ECF and EMAIL** | **VIA EMAIL** |
|---|---|
| John L. Reed | George W. Neuner |
| Denise Seastone Kraft | Robert J. Tosti |
| EDWARDS ANGELL PALMER | Alan M. Spiro |
| & DODGE LLP | Brian M. Gaff |
| 919 North Market Street, 15th Floor | EDWARDS ANGELL PALMER |
| Wilmington, DE 19801 | & DODGE LLP |
| dcraft@eapdlaw.com | 101 Federal Street |
| jreed@eapdlaw.com | Boston, MA 02110 |
|  | gneuner@eapdlaw.com |
|  | rtosti@eapdlaw.com |
|  | aspiro@eapdlaw.com |
|  | bgaff@eapdlaw.com |
|  |  |
|  | Michael Brody |
|  | WINSTON & STRAWN LLP |
|  | 35 West Wacker Drive |
|  | Chicago, IL 60601 |
|  | mbrody@winston.com |

　　　/s/ Patricia Smink Rogowski
Patricia Smink Rogowski (Bar ID No. 2632)
progowski@cblh.com