# EXHIBIT 1

CONFIDENTIAL UNDER PROTECTIVE ORDER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| S.O.I.TEC SILICON ON INSULATOR TECHNOLOGIES S.A. and SOITEC USA, INC., <br><br> Plaintiffs and Counterclaim Defendants, <br><br> v. <br><br> MEMC ELECTRONIC MATERIALS, INC., <br><br> Defendant and Counterclaim Plaintiff. | JURY TRIAL DEMANDED <br><br> Civil Action No.: 05-806-KAJ |

## MEMC'S RESPONSES TO SOITEC'S FIRST SET OF INTERROGATORIES (NOS. 1-16)

Defendant Counterclaim Plaintiff MEMC Electronic Materials, Inc. ("MEMC") hereby responds to the First Set of Interrogatories (Nos. 1-16) ("Interrogatories") of Plaintiff and Counterclaim Defendants S.O.I.T.E.C. Silicon On Insulator Technologies S.A. and Soitec USA, Inc. (collectively, "Soitec") as follows:

### General Objections

1. MEMC objects to the extent the Interrogatories seek documents or information protected by the attorney-client privilege and/or the work product doctrine.

2. MEMC objects to the Interrogatories to the extent they seek to impose obligations beyond those provided in the Federal Rules of Civil Procedure or local rules.

3. To the extent a response is provided by reference to documents being produced, MEMC incorporates by reference herein its objections to Soitec's First Request for Production of Documents.

4. Consistent with Fed. R. Civ. P. 33(d), MEMC objects to providing responses to

CONFIDENTIAL UNDER PROTECTIVE ORDER

Interrogatories where the information can be derived from documents which are being produced for inspection in response to related document requests propounded by Soitec.

5. MEMC reserves the right to supplement these responses during the course of discovery as additional information is ascertained.

6. MEMC objects to Soitec's definition of "Related Patents and Applications" to the extent it includes U.S. Patent No. 5,919,302 or any foreign counterparts of the '302 patent. This patent was one of the six patents previously dropped from this lawsuit by agreement of the parties and so it is no longer in suit. Soitec's definition to include the '302 patent results in Interrogatories that are unduly burdensome and that seek information that is irrelevant and/or not reasonably calculated to lead to the discovery of admissible evidence.

7. MEMC objects to Soitec's definition of "Prior Art," particularly the "relating in any way" language, to the extent it is vague, indefinite, overly broad, unduly burdensome and inconsistent with Title 35 of the United States Code.

## INTERROGATORIES

1. For each Asserted Claim, explain in detail the basis for MEMC's allegation that Soitec infringes that claim, identifying each Soitec product that is alleged to infringe any Asserted Claim.

**Response:**

MEMC objects to Interrogatory No. 1 on the grounds that it is premature, calls for a legal conclusion and is the subject of expert testimony which, per the Court's Scheduling Order, is not due until December 4, 2006. MEMC has not yet received any of Soitec's documents or things in discovery in this litigation, nor has MEMC conducted any depositions of any of Soitec's witnesses yet. MEMC has not received discovery concerning other products in Soitec's product

CONFIDENTIAL UNDER PROTECTIVE ORDER

line which might infringe. MEMC reserves the right to supplement this response as discovery proceeds and Soitec's position and products become known. Subject to and without waiver of its objections, MEMC responds at this time as follows.

Soitec infringes at least claims 1, 9 and 10 of the '104 patent through the sale of the Soitec UNIBOND SOI product in the United States.

As for claim 1, the Soitec UNIBOND SOI product has a handle wafer, a device layer and an insulating layer between the handle wafer and the device layer. The device layer is a single crystal silicon device layer which comes from the top layer of a single crystal Czochralski silicon donor wafer ("CZ donor wafer"). The remaining portion of the CZ donor wafer (after it donates the top layer) can be used several times to donate additional device layers for additional UNIBOND SOI products. Each Soitec UNIBOND SOI product has the circular shape of a conventional silicon wafer. Thus, each device layer has the circular shape of a conventional silicon wafer. Each device layer thus has a central axis through the center of the device layer, a circumferential edge around the periphery of the device layer, and a radius between the center point and the periphery of the device layer. MEMC obtained samples of Soitec's CZ donor wafers from which the device layers are derived as part of the litigation in France between the parties. Tests of those CZ donor wafers show that they contain a predominant intrinsic point defect. Tests also show that at the center of the CZ donor wafer (which becomes the center of the device layer in the Soitec UNIBOND SOI product) there is an axially symmetric region containing predominantly vacancy intrinsic point defects without any agglomerated intrinsic point defects. As such, this axially symmetric region contains "a predominate intrinsic point defect, which is substantially free of agglomerated intrinsic point defects" within the language of claim 1. Since all of the elements of claim 1 are found in the Soitec UNIBOND SOI products,

claim 1 is infringed when Soitec sells them in the United States.

As for claim 9, tests of the Soitec CZ donor wafers show that they have an oxygen content which is well below 13 PPMA. As such, the device layer in the Soitec UNIBOND SOI products has "an oxygen content which is less than about 13 PPMA." Since all of the elements of claim 9 are found in the Soitec UNIBOND SOI products (please see the above paragraph for coverage of the elements recited in claim 1), claim 9 is infringed when Soitec sells the Soitec UNIBOND SOI products in the United States.

As for claim 10 and as explained above in the paragraph for claim 1, tests show that at the center of the Soitec CZ donor wafer (which becomes the center of the device layer in the Soitec UNIBOND SOI product) there is an axially symmetric region containing predominantly vacancy intrinsic point defects without any agglomerated intrinsic point defects. As such, "vacancies are the predominant intrinsic point defect" within this axially symmetric region at the center of the device layer as required by claim 10. Thus, all of the elements of claim 10 are found in the Soitec UNIBOND SOI products (please see the above paragraph for coverage of the elements recited in claim 1). Claim 10 is infringed when Soitec sells the Soitec UNIBOND SOI products in the United States.

2.  Separately for each Asserted Claim, state how you construe each limitation of that claim which you believe to require construction; the scope of equivalents under the doctrine of equivalents to which you contend the limitation is entitled; and the factual basis for your contentions.

**Response:**

MEMC objects to Interrogatory No. 2 on the grounds that it is premature, calls for a legal conclusion and is the subject of expert testimony which, per the Court's Scheduling Order, is not

CONFIDENTIAL UNDER PROTECTIVE ORDER

provide such requested information, in accordance with Fed. R. Civ. P. 33(d).

4. Identify each article that is or has been manufactured or sold or offered for sale by or on behalf of MEMC that embodies any of the Asserted Claims and state in detail the basis for your belief that the identified article embodies the Asserted Claim.

**Response:**

MEMC objects to Interrogatory No. 4 as being overly broad and unduly burdensome, vague and seeking irrelevant information not likely to lead to the discovery of admissible evidence. Subject to and without waiver of its objections, MEMC responds as follows.

MEMC made less than ten SOI products as engineering samples on a test basis in December 2004 and shipped them in a split lot in January 2005. At least some of these samples were covered by the Asserted Claims. Since then, MEMC has made and shipped a small number of additional SOI products covered by an Asserted Claim. These SOI products had the circular shape of a conventional silicon wafer. The device layer for these products was made from a single crystal CZ silicon donor wafer believed to have a central axis containing vacancy intrinsic point defects as the predominant intrinsic point defect and being substantially free of agglomerated intrinsic point defects.

5. For each invention covered by each Asserted Claim, describe in detail the conception of the invention, reduction of the invention to practice, and diligence in reducing the invention to practice.

**Response:**

MEMC objects to Interrogatory No. 5 as being overly broad and unduly burdensome, vague and seeking irrelevant information not likely to lead to the discovery of admissible evidence. Subject to and without waiver of its objections, MEMC responds as follows.

CONFIDENTIAL UNDER PROTECTIVE ORDER

Dr. Robert J. Falster conceived of the invention covered by claims 1 and 9 prior to a meeting with Soitec on October 30, 1996. Dr. Falster had previously conceived and reduced to practice a CZ silicon wafer containing an axially symmetric region substantially free of agglomerated intrinsic point defects where the predominant intrinsic point defect was interstitial. Dr. Falster believed such a wafer would provide better performance than the wafers then used by the integrated circuit industry. In advance of his meeting with Soitec on October 30, 1996, Dr. Falster knew that Soitec's primary product at that time was the SOI product. Dr. Falster conceived of using his CZ silicon wafer as the donor wafer to provide the device layer in the Soitec SOI product prior to the meeting. This was a conception of claims 1 and 9.

Dr. Falster conceived a CZ silicon wafer containing an axially symmetric region of predominant vacancy intrinsic point defects and substantially free of agglomerated vacancy intrinsic point defects in 1997. In addition, Dr. Falster conceived of using such a wafer as the donor wafer for the device layer in an SOI structure. This was a conception of claim 10.

Claims 1, 9 and 10 were constructively reduced to practice on September 2, 1998, when U.S. Provisional Application No. 60/098,902 was filed with the United States Patent and Trademark Office.

6. For the period prior to September 2, 1998, describe in detail each sale, offer for sale, or other commercial or public use or disclosure of each product embodying any invention covered by each Asserted Claim.

**Response:**

None.

7. Separately for each Asserted Claim, describe in detail the applicability of each of the secondary considerations of non-obviousness as set forth in Graham v. John Deere, 383 U.S.

CONFIDENTIAL UNDER PROTECTIVE ORDER

As to the objections:

Dated: May 19, 2006

SENNIGER POWERS

By: /s/ *signature*

Robert M. Evans, Jr. *(Pro Hac Vice)*
David W. Harlan *(Pro Hac Vice)*
Marc W. Vander Tuig *(Pro Hac Vice)*
One Metropolitan Square
16th Floor
St. Louis, MO 63102
(314) 231-5400
(314) 231-4342 (Fax)

*Attorneys for MEMC Electronic Materials, Inc.*

**OF COUNSEL:**

CONNOLLY BOVE LODGE & HUTZ LLP
Paul E. Crawford (I.D. #493)
Patrician S. Rogowski (I.D. #2632)
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141
(302) 658-5614 (Fax)
pcrawford@cblh.com
progowski@cblh.com

CONFIDENTIAL UNDER PROTECTIVE ORDER

## CERTIFICATE OF SERVICE

I, Robert M. Evans, Jr., hereby certify that on this 19th day of May, 2006, I served MEMC'S RESPONSES TO SOITEC'S FIRST SET OF INTERROGATORIES (NOS. 1-16) on the attorneys of record at the following addresses as indicated via First Class U.S. Mail:

John L. Reed
Denise Seastone Kraft
EDWARDS ANGELL PALMER
    & DODGE LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801

George W. Neuner
Robert J. Tosti
Alan M. Spiro
Brian M. Gaff
EDWARDS ANGELL PALMER
    & DODGE LLP
101 Federal Street
Boston, MA 02110

Michael Brody
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601

Robert M. Evans, Jr.

16