# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| S.O.I.TEC SILCON ON INSULATOR TECHNOLOGIES S.A. and SOITEC USA, Inc., | ) ) ) ) JURY TRIAL DEMANDED |
| Plaintiffs, | ) Case No. 1:05-cv-00806-GMS-MPT |
| v. | ) ) ) |
| MEMC ELECTRONIC MATERIALS, INC., | ) ) |
| Defendant. | |

### RESPONSE BY SOITEC TO MEMC'S OBJECTIONS TO MAGISTRATE THYNGE'S MARCH 13, 2008 ORDER

EDWARDS ANGELL PARMER & DODGE LLP

   */s/ Denise Seastone Kraft*
John L. Reed (DE I.D. No. 3023)
Denise Seastone Kraft (DE I.D. No. 2778)
919 North Market Street
Suite 1500
Wilmington, DE 19801
302-777-7770
888-325-9741 (fax)
jreed@eapdlaw.com
dkraft@eapdlaw.com

DATED: April 14, 2008      Attorneys for Plaintiffs
                                              S.O.I.TEC Silicon On Insulator Technologies S.A.
                                              and SOITEC USA, INC.

OF COUNSEL:

George W. Neuner (Pro Hac Vice)
Alan M. Spiro (Pro Hac Vice)
Brian M. Gaff (Pro Hac Vice)
EDWARDS ANGELL PALMER & DODGE LLP
111 Huntington Avenue
Boston, MA 02199-7613
(617) 517-5538
(888) 325-9229 (fax)

-and-

Michael Brody (Pro Hac Vice)
Tracy Allen (Pro Hac Vice)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600
(312) 558-5700 (fax)

WLM 513274.1

**TABLE OF CONTENTS**

<u>Page</u>

TABLE OF CITATIONS ................................................................................................................ ii
I. BACKGROUND AND SUMMARY OF ARGUMENT ...................................................... 1
II. ARGUMENT ........................................................................................................................ 2
    A. MEMC has Waived Its Privilege with Respect to Inventorship and Conception of the '104 Patent ................................................................................................................. 2
        1. MEMC's Production of the '302 Patent Invention Disclosure is a Waiver ..................... 3
        2. Mr. Hejlek's Testimony Disclosing Privileged Communications is a Waiver ............... 4
        3. MEMC's Wavier Extends to All Information of the Subject Matter of Conception of the Invention of the '104 Patent ................................................................................... 6
    B. Magistrate Judge Thynge Should Be Permitted to Perform an *In Camera* Inspection ... 9
III. CONCLUSION .................................................................................................................... 11

# TABLE OF CITATIONS

**Cases**

*Board of Trustees of the Leland Stanford Junior University v.*
*Roche Molecular Systems, Inc.*,
237 F.R.D. 618 (N.D. Cal., July 31, 2006) .................................................................. 7

*Brackett v. Providian Ins. Group, Inc.*,
1996 U.S. Dist. LEXIS 20496 (E.D. Tenn. 1996) ....................................................... 9

*Chiron Corp. v. Genentech, Inc.*,
179 F. Supp. 2d 1182 (E.D. Cal. 2001) ....................................................................... 6

*CP Kelko U.S., Inc. v. Pharmacia Corp.*,
213 F.R.D. 176 (D. Del. 2002) .................................................................................... 8

*Duplan Corp. v. Deering Milliken, Inc.*,
397 F. Supp. 1146 (D. S.C. 1974) ............................................................................... 8

*Handgards, Inc. v. Johnson & Johnson*,
413 F. Supp. 926 (N.D. Cal. 1976) ............................................................................. 7

*Hercules, Inc. v. Exxon Corp.*,
434 F. Supp. 136 (D. Del. 1977) .............................................................................. 7, 8

*In re Antitrust Grand Jury*,
805 F.2d 155 (6th Cir. 1986) .................................................................................. 11

*In re Echostar Comm. Corp.*,
448 F.3d 1294 (Fed. Cir. 2006) ........................................................................... 4, 5, 6

*In re Pioneer Hi-Bred Intern., Inc.*,
238 F.3d 1370 (Fed. Cir. 2001) ................................................................................... 7

*In re Spalding Sports Worldwide, Inc.*,
203 F.3d 800 (Fed. Cir. 2000) .................................................................................. 6, 7

*Koch Materials Co. v. Shore Slurry Seal, Inc.*,
208 F.R.D. 109 (D.N.J. 2002) .................................................................................... 10

*Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*,
227 F.R.D. 382 (W.D. Pa. 2005) ............................................................................. 6, 7

*McCormick-Morgan, Inc. v. Teledyne Industries*,
765 F. Supp. 611 (N.D. Cal. 1991) ............................................................................. 7

*Renner v. Chase Manhattan Bank*,
    2001 U.S. Dist. LEXIS 9766 (S.D.N.Y. 2001) .......................................................................... 10

*Starsight Telecast, Inc. v. Gemstar Development Corp.*,
    158 F.R.D. 650 (N.D. Cal. December 12, 1994) ....................................................................... 7

*Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*,
    230 F.R.D. 688 (M.D. Fla. 2005) .............................................................................................. 6

I.   BACKGROUND AND SUMMARY OF ARGUMENT

This declaratory judgment action seeks a determination (1) that Soitec does not infringe U.S. Patent No. 6,236,104 ("the '104 Patent," assigned to MEMC); (2) that the '104 Patent is invalid and unenforceable; and (3) that Soitec's CEO, Dr. André Jacques Auberton-Hervé, was a co-inventor as to whatever valid and enforceable claims the '104 Patent may contain.  The '104 Patent covers a type of "silicon on insulator" or "SOI".  SOI is a substrate on which microelectronic devices are manufactured.  It has a very thin top layer of silicon in which the microelectronic devices are built (the "device layer"), a layer of insulating material beneath the device layer, and a standard silicon wafer (a thin disc of silicon) supporting the two.  Soitec makes SOI by splitting the device layer off of a silicon "donor" wafer and transferring that layer to the top of the SOI substrate. The claims at issue purport to cover SOI substrates whose device layers (a) have certain distributions of "intrinsic point defects" and (b) are substantially free of "agglomerated point defects."

On February 28, 2008, Magistrate Judge Thynge held an extended telephonic discovery conference to take arguments regarding three outstanding discovery issues raised by Soitec:  (1) Soitec's request for an order precluding MEMC from using Dr. George Rozgonyi as a consultant or expert in this case,[1] (2) Soitec's request for an order compelling additional testimony and documents concerning the alleged conception of the invention of the '104 Patent, and (3) Soitec's request for an order compelling the production of a report prepared by an MEMC employee, Dr. Luciano Mule'Stagno, summarizing and analyzing test results relied on in MEMC's response to an infringement interrogatory.

---

[1] Soitec's motion was based on the fact that, prior to being contacted by counsel for MEMC, Dr. Rozgonyi had conversations with counsel for Soitec concerning this action and possible retention of Dr. Rozgonyi as an expert by Soitec.  Soitec is not objecting to Magistrate Judge Thynge's order denying Soitec's motion.

WLM 513274.1

1

After hearing about an hour and a half of argument, on March 13, 2008, Magistrate Judge Thynge issued an order denying Soitec's motion to preclude the use of Dr. Rozgonyi, granting Soitec's motion to compel additional testimony and documents concerning the alleged conception of the invention of the '104 Patent, and ordering an *in camera* inspection of Dr. Mule'Stagno's test summary report. MEMC now objects to Magistrate Judge Thynge's order compelling production and ordering an *in camera* inspection.

Magistrate Judge Thynge's order is supported by applicable law in light of the facts presented. Magistrate Judge Thynge correctly found that MEMC has waived any privilege it had with respect to the subject matter of Dr. Robert Falster's alleged conception of the invention of the '104 Patent through numerous instances of selective disclosure of privileged information relating to that topic. Rather than allowing MEMC to sustain its currently selective and one-sided disclosure of the evidence concerning conception, Magistrate Judge Thynge held that MEMC must disclose all information concerning that topic. Magistrate Judge Thynge also properly ordered the *in camera* inspection. Indeed, MEMC acquiesced to this typical procedure for resolving disputes concerning privilege. This Court should overrule MEMC's objections to the March 13, 2008 Discovery Order.

## II.  ARGUMENT

### A.  MEMC has Waived Its Privilege with Respect to Inventorship and Conception of the '104 Patent

MEMC objects to Magistrate Judge Thynge's order finding that MEMC has waived any attorney-client privilege and work product protection it may have had with respect to conception of the invention of the '104 Patent and holding that MEMC must produce an invention disclosure document and provide additional testimony from Dr. Falster, the inventor of the '104 Patent, and Mr. Hejlek, the attorney in charge of prosecuting the application that issued as the '104 Patent.

WLM 513274.1

2

MEMC asserts that such information and testimony is privileged and was improperly ordered produced.

As found by Magistrate Judge Thynge, MEMC waived any privilege with respect to the subject matter of the conception of the '104 Patent because of "a whole host of related subject matter that has been disclosed." Exh. 1, Transcript of February 28, 2008 Telephonic Discovery Conference, 57:11-23. Particularly, MEMC has committed at least two separate acts constituting waiver of any privilege associated with the conception issue.

### 1. MEMC's Production of the '302 Patent Invention Disclosure is a Waiver

The supposed invention of the '104 Patent is the use of an allegedly novel type of material – "agglomerate" free silicon – as the "device layer" on a well known SOI structure. ("The present invention is directed to a silicon on insulator (SOI) structure having a low defect density device layer." Exh. 2, '104 Patent, 1:10-11.) There is no question that SOI material was well known as of the application date for the '104 Patent. Exh. 2, 1:10-65. The supposedly special material making up the device layer of the claimed device, however, was, according to MEMC, invented by Falster and other MEMC scientists at about this time. Exh. 3, '302 Patent, 1:11-16 ("More particularly, the present invention relates to single crystal silicon having an axially symmetric region of vacancy dominated material which is devoid of agglomerated intrinsic point defects. . . ") Thus, the "conception" underlying the '104 Patent was Falster's alleged conception of the idea that his "new" type of silicon would work well as the device layer of an SOI wafer.

MEMC has produced the 1995 invention disclosure statement underlying the patent on Falster's "new" type of silicon; that is, the patent on the agglomerate free silicon which the '104 Patent discloses as the source for its allegedly novel SOI. Indeed, essentially all of the '104

Patent's disclosure of how to make this supposedly novel silicon is lifted verbatim from the application for the '302 Patent. *Compare* Exh. 2, Figs. 11-35, 14:49-21:11, 21:39-23:17, 26:40-33-41 *with* Exh. 3, Figs. 1-25, 6:6-23:4. The invention conception memorialized in the 1995 disclosure statement produced by MEMC, thus, is part and parcel of the conception of the invention claimed in the '104 Patent. MEMC admits that the 1995 disclosure was privileged and acknowledges that it has waived the privilege as to that document. Hence, there can be no dispute that MEMC has disclosed privileged matter relating to the conception of the '104 Patent. The law does not allow MEMC to choose to disclose selectively one part of the conception record, while wielding the privilege as a shield to conceal the rest of that record. *See In re Echostar Comm. Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006) (finding attorney-client privilege waived and holding that party may not wield privilege as a sword in disclosing favorable information and as a shield in protecting unfavorable information on same subject-matter). Thus, in knowingly producing some of the privileged material relating to the facts surrounding the conception of the '104 Patent, MEMC has also waived the privilege as to other attorney-client communications on the same subject.

        2.        **Mr. Hejlek's Testimony Disclosing Privileged Communications is a Waiver**

MEMC's second waiver of this subject matter occurred during the deposition of it's prosecution counsel, Hejlek. MEMC responded to Soitec's Interrogatory No. 5 by providing details surrounding "the conception of the invention [of the '104 patent], reduction of the invention to practice, and diligence in reducing the invention to practice." See Exh. 4, MEMC's Objections and Responses to Soitec's First Set of Interrogatories, Response No. 5, pp. 6-7. At his deposition, Hejlek was allowed to testify concerning his attorney-client discussions with Falster on the subject of conception insofar as those conversations were consistent with the

interrogatory answer, and then instructed not to discuss anything else that was said. Exh. 5, Hejlek Dep., at 152:2-21. See also, *id.*, at 152:22-153:22, 154:13-155:14. Similar instructions were given with respect to conversations on the subject of conception both before and after the one that was partially disclosed. Exh. 5, Hejlek Dep., at 145:10-146:17, 158:20-164:2. Likewise, Falster was instructed not to answer similar questions on the same topic. Exh. 6 Falster Dep., 12/20/07, at 134:10-135:4

As found by Magistrate Judge Thynge, MEMC permitted Mr. Hejlek to provide testimony concerning privileged attorney-client communications concerning Dr. Falster's conception of the invention of the '104 Patent – up to the point where that information was consistent with MEMC's interrogatory response. When counsel for Soitec attempted to delve further on that topic, MEMC instructed its witnesses not to answer any further questions. Again, the law does not allow MEMC to selectively disclose only the helpful, privileged information. Once MEMC started down the path of disclosure, it was required to disclose all privileged information on the same subject matter. *See In re Echostar*, 448 F.3d at 1301 (requiring party to disclose all privileged information on same subject-matter as that already disclosed). Accordingly, Magistrate Judge Thynge properly found that MEMC had waived the privilege with respect to the issue of conception of the invention of the '104 Patent.

MEMC asserts that Mr. Hejlek, MEMC's legal counsel who handled the prosecution of the '104 Patent, was incapable of waiving any privilege MEMC may have had with respect to either the invention disclosure or other information relating to Dr. Falster's alleged conception of the invention of the '104 patent. MEMC, however, conveniently ignores the fact that Mr. Hejlek was represented at his deposition by MEMC's litigation counsel. It was MEMC's litigation counsel that allowed him to testify as to helpful privileged information, but then instructed him

not to answer with respect to other portions of that privileged information.  In this situation, it is appropriate to hold that the actions of MEMC's litigation counsel are imputable to MEMC itself. *See*, *e.g.*, *Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 694 (M.D. Fla. 2005) (finding privilege waived and rejecting argument that litigation counsel's actions in failing to assert privilege did not act to waive privilege for client).

        3.        **MEMC's Wavier Extends to All Information of the Subject Matter of Conception of the Invention of the '104 Patent**

MEMC also argues that the scope of any waiver found by Magistrate Judge Thynge should be limited to the materials actually disclosed, and not to the subject-matter of the alleged conception of the '104 Patent, citing authority from the Third Circuit Court of Appeals.  MEMC, however, fails to apply the appropriate legal standard in analyzing whether MEMC has waived the entire subject matter through its actions.  As the Federal Circuit has made clear, "[f]ederal circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, if those materials relate to an issue of substantive patent law." *In re Echostar Communs. Corp.*, 448 F.3d 1294, 1298 (Fed. Cir. 2006) (quoting *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803 (Fed. Cir. 2000); see also *Chiron Corp. v. Genentech, Inc.*, 179 F. Supp. 2d 1182, 1185-86 (E.D. Cal. 2001) ("the district court in a patent litigation shall apply Federal Circuit law when resolving discovery issues that occur in the unique context of patent litigation."). Issues that relate to discovery disputes and other procedural issues that are unique to patent cases should be decided pursuant to Federal Circuit law. See *Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*, 227 F.R.D. 382, 391 (W.D. Pa. 2005) (holding that the issue of "whether [the patentee's] invention record was protected by the attorney-client privilege was 'unique to patent law because the invention record relates to an

invention submitted for consideration for possible patent protection . . . clearly implicating] substantive patent law.'") (quoting *Spalding*, 203 F.3d at 804).

Contrary to MEMC's arguments, Federal Circuit law does not limit the scope of waiver to the materials actually disclosed. Rather, courts have consistently held that waiver of any privilege concerning an issue such as inventorship waives all privilege concerning the entire subject matter of that issue. *In re Pioneer Hi-Bred Intern., Inc.*, 238 F.3d 1370, 1374-75 (Fed. Cir. 2001) (holding that pre-litigation disclosure to Securities and Exchange Commission of counsel's tax advice waived privilege "with respect to all documents which formed the basis for the advice, ***all documents*** considered by counsel in rendering that advice, and ***all reasonably contemporaneous documents*** reflecting discussions by counsel or others concerning that advice") (emphasis added); *Board of Trustees of the Leland Stanford Junior University v. Roche Molecular Systems, Inc.*, 237 F.R.D. 618 (N.D. Cal., July 31, 2006) (the court granted a movant's motion to compel privileged documents and communications related to inventorship of the patent at issue and the patents subsequently issuing thereon); *Martin Marietta*, 227 F.R.D. at 397 (plaintiff put attorney's understanding of material prior art in issue and thus waived the privilege with regard to all communications about the disclosure of material prior art to the PTO.); *Starsight Telecast, Inc. v. Gemstar Development Corp.*, 158 F.R.D. 650, 653 (N.D. Cal. December 12, 1994) (holding, in a patent infringement case, that "[i]n general, a party's voluntary disclosure of one or more privileged communications between the party and his attorney waives the privilege as to ***all communications between the party and his attorney on the same subject***.") (emphasis added), citing, *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 156 (D. Del. 1977); *Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 929 (N.D. Cal. 1976); *McCormick-Morgan, Inc. v. Teledyne Industries*, 765 F. Supp. 611 (N.D. Cal. 1991);

*Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1161 (D. S.C. 1974). The underlying rationale is one of fairness: "A party cannot disclose only those facts beneficial to its case and refuse to disclose, on the grounds of privilege, related facts adverse to its position." *Hercules*, 434 F. Supp. at 156.

As a hedge against this Court's affirmance of Magistrate Thynge's ruling, MEMC makes two final arguments.

First, MEMC argues the Soitec has been allowed to inquire "fully" into the "facts" surrounding conception. However, since MEMC is indisputably withholding documents and testimony regarding those facts on a claim of privilege, it is manifestly the case that Soitec's inquiry has been limited to the evidence that MEMC considers convenient.

Second, MEMC attempts to shield the compelled information from discovery by unilaterally agreeing to stipulate that it will not use the previously disclosed privileged information for any purpose in this action. *See* MEMC's Objections to Magistrate Thynge's March 13, 2008 Order, Exh. 8. MEMC's proposed stipulation, however, does not preclude this Court from compelling discovery of otherwise relevant information. To hold otherwise would be to allow a party who has waived privilege to reclaim that privilege through unilateral action. The law is clear that MEMC's attempt at reclaiming its waived privilege is not possible – once a privilege is waived it cannot be unwaived. *See*, *e.g.*, *CP Kelko U.S., Inc. v. Pharmacia Corp.*, 213 F.R.D. 176, 179 (D. Del. 2002) (ordering privileged document produced and holding that "a right that is waived is not available to be picked up again as if it were a handy tool.")

As found by Magistrate Judge Thynge, the information requested by Soitec is relevant and discoverable, and any privilege has been waived by MEMC. This Court should overrule MEMC's objection. Magistrate Thynge's order requiring MEMC to produce all documents

relating to conception and to permit complete examination of MEMC's witnesses on that subject should be affirmed.

### B. Magistrate Judge Thynge Should Be Permitted to Perform an *In Camera* Inspection

In responding to Soitec's contention interrogatory seeking the basis for its infringement allegations, MEMC stated that it relied on the results of testing performed on certain Soitec wafers. No other basis for MEMC's allegations of infringement was given. Soitec has asked for the testing on which MEMC's infringement case rests. MEMC has contended that the testing is protected by the work product privilege, but proposed to produce the raw test data, in exchange for Soitec's agreement that the mere production of the data would not constitute any further waiver of the privilege. MEMC acknowledges that its interrogatory answer relied in part on an expert report analyzing the data, but has declined to produce that report on work product grounds. Before Magistrate Judge Thynge, Soitec moved for an order compelling MEMC to produce the expert report. See Exh. 4, Response No. 1, pp. 2-4.

As found by Magistrate Judge Thynge, by relying on its testing data in responding to Soitec's infringement interrogatory, MEMC waived any work product protection that might have applied to the raw data as well as testing procedures used to collect the raw data. Exh. 1, 32:2-5. This ruling is not contested by MEMC and is well supported in the law. *See*, *e.g.*, *Brackett v. Providian Ins. Group, Inc.*, 1996 U.S. Dist. LEXIS 20496, *3-*4 (E.D. Tenn. 1996)(finding attorney-client privilege and work product waived by summary of and reliance on protected information in responding to interrogatories).

With respect to the summary report, Magistrate Judge Thynge could not determine what portions, if any, should be withheld from Soitec. Accordingly, Magistrate Judge Thynge, ***at***

***MEMC's suggestion***, ordered an *in camera* inspection of that report for further evaluation of MEMC's work product claim:

> THE COURT: Sure, And if you want me to review it [the summary report], I will, and try to give some direction as to where I see what types of disclosures I think are appropriate and where I don't think they are appropriate.
>
> UNIDENTIFIED SPEAKER: I would feel more comfortable, probably, with letting you be the arbiter of what should and not be produced to me. Why don't we send you a copy of the report confidentially, and go from there. . . . Its not terribly long. Why don't we put together a submission to you that sort of explains what we think should stay in and what should stay out and why in the context of what you are saying now. We will forward it to you and then you can give us guidance or tell us what to do.

*See* Exh. 1, 32:2-34:24

MEMC now objects to Magistrate Judge Thynge's order adopting MEMC's proposal and directing MEMC to provide an unredacted copy of a memorandum prepared by Dr. Luciano Mule'Stagno containing analysis and conclusions of MEMC's prefiling testing of Soitec wafers. MEMC, however, has waived its right to object to a result to which it has already consented, and the objection could properly be rejected on that basis alone.

In addition, Magistrate Judge Thynge's decision to conduct *in camera* review is unobjectionable in itself. It is commonplace for a federal court to perform an *in camera* review of allegedly privileged documents before making any further order concerning the discoverability of such documents. *See Koch Materials Co. v. Shore Slurry Seal, Inc.*, 208 F.R.D. 109,121 (D.N.J. 2002) ("To ensure that all relevant information is produced, the court shall conduct an *in camera* review of the documents identified by the defendants in the privilege log, as well as the redacted portions of the e-mails for relevance. The court shall then determine whether relevant and not privileged information has been withheld."); *Renner v. Chase Manhattan Bank*, 2001 U.S. Dist. LEXIS 9766, at *12-14 (S.D.N.Y. 2001) ("Use of an *in camera* review of documents to determine the applicability of the attorney-client privilege is

common practice in circumstances such as this . . ."). Indeed, it has been found to be reversible error for a district court to not conduct an *in camera* review of challenged documents. *See, e.g., In re Antitrust Grand Jury*, 805 F.2d 155, 168 (6th Cir. 1986) (holding that it was plain error for court to find privilege waived and order production without conducting an *in camera* inspection of the disputed documents).

To the extent MEMC is attempting to argue that not only is *in camera* review improper, but that so too is any disclosure that may result from that review, MEMC's objections may have been waived by its consent to the *in camera* review procedure, but, at a minimum, they are not ripe, as Magistrate Judge Thynge has yet to determine what, if any, further production should be made.

### III.   CONCLUSION

By disclosing helpful privileged information, MEMC has waived any privilege with respect to all information concerning the conception of the invention of the '104 Patent. MEMC should also abide by Magistrate Judge Thynge's order for an *in camera* inspection its test summary report. Accordingly, this Court should overrule MEMC's objections and affirm the March 13, 2008 Order.

|  |  |
|---|---|
|  | EDWARDS ANGELL PARMER & DODGE LLP |
|  | */s/ Denise Seastone Kraft* |
|  | John L. Reed (DE I.D. No. 3023) |
|  | Denise Seastone Kraft (DE I.D. No. 2778) |
|  | 919 North Market Street |
|  | Suite 1500 |
|  | Wilmington, DE 19801 |
|  | 302-777-7770 |
|  | 888-325-9741 (fax) |
|  | jreed@eapdlaw.com |
|  | dkraft@eapdlaw.com |
| DATED: April 14, 2008 | Attorneys for Plaintiffs |
|  |   S.O.I.TEC Silicon On Insulator Technologies S.A. |
|  |   and SOITEC USA, INC. |

OF COUNSEL:

George W. Neuner (Pro Hac Vice)
Alan M. Spiro (Pro Hac Vice)
Brian M. Gaff (Pro Hac Vice)
EDWARDS ANGELL PALMER & DODGE LLP
111 Huntington Avenue
Boston, MA 02199-7613
(617) 517-5538
(888) 325-9229 (fax)

-and-

Michael Brody (Pro Hac Vice)
Tracy Allen (Pro Hac Vice)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600
(312) 558-5700 (fax)

WLM 513274.1