2



Analysis
As of: Apr 14, 2008

KLAUS RENNER, Plaintiff, -against- CHASE MANHATTAN BANK, MICHELINO MORELLI, TOWNSEND FINANCIAL SERVICES CORP., TOWNSEND INVESTMENT FUND, LLC, GERALD TOWNSEND, and RABON WOLFORD, Defendants.

98 Civ. 926 (CSH)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*2001 U.S. Dist. LEXIS 9766*

July 11, 2001, Decided
July 13, 2001, Filed

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, a citizen and resident of Switzerland, brought a diversity action after defendants allegedly defrauded him out of three million dollars. Defendants financial services corporations moved for a ruling that certain communications be protected from discovery by the attorney-client privilege. Plaintiff cross-moved for a ruling that the crime-fraud exception precluded the assertion of that privilege.

**OVERVIEW:** Plaintiff pursued an action against defendants financial services corporations for the loss of three million dollars he alleged was taken from him by fraud. The court issued an order requiring the parties to submit to the court and exchange simultaneous omnibus discovery reports, listing all remaining documents and third party witnesses which the parties felt entitled to discover or depose, and a summary of any possible dispute regarding counsel for defendants financial services corporations, and his law firm. After reading the submissions, the court focused its attention upon two particular disputes: (1) plaintiff's argument that the attorney-client privilege invoked by defendants ought not to apply because the contested communications constituted non-legal advice outside the context of an attorney-client relationship, and (2) that counsel for defendants and his law firm had to be disqualified from further representing defendants. The court concluded that in camera review of the communications was necessary to decide whether the attorney-client privilege attached to each communication between defendants financial services corporation and its counsel vel non.

**OUTCOME:** The court directed defendants financial services corporations to submit to the court for in camera inspection all documents withheld from discovery on the basis of attorney-client privilege.

**LexisNexis(R) Headnotes**

*Evidence > Privileges > Attorney-Client Privilege > Exceptions*
*Legal Ethics > Client Relations > Confidentiality of Information*
[HN1] By its nature, the crime-fraud exception to the attorney-client privilege can only apply, if it applies at all, to instances where the attorney-client privilege itself is first established. The court must decide whether the attorney-client privilege applies to the communications withheld by the defendants before addressing the crime-fraud exception's applicability.

*Evidence > Privileges > Attorney-Client Privilege > Scope*

LEXSEE 2001 U.S. DIST. LEXIS 9766 (S.D.N.Y. 2001)

2001 U.S. Dist. LEXIS 9766, *

Page 2

*Legal Ethics > Client Relations > Confidentiality of Information*

[HN2] The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. To invoke the attorney-client privilege, a party must demonstrate that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice. The burden of sustaining the privilege is on its proponent.

*Legal Ethics > Client Relations > Confidentiality of Information*

*Securities Law > Self-Regulating Entities > National Association of Securities Dealers*

[HN3] If correspondence and oral communication are legal in nature, between client and counsel, and kept confidential, the attorney-client privilege presumptively applies.

*Criminal Law & Procedure > Counsel > Right to Counsel > General Overview*

*Evidence > Privileges > Attorney-Client Privilege > Scope*

*Evidence > Privileges > Marital Privileges > Adverse Spousal Testimony > Waiver*

[HN4] Use of in camera review of documents to determine the applicability of the attorney-client privilege is common practice in circumstances such as this. The Supreme Court has approved the practice of requiring parties who seek to avoid disclosure of documents to make the documents available for in camera inspection and the practice is well established in federal courts. An in camera review is appropriate where there has been at least some showing, however preliminary and indeterminative, that the communications may not be protected by the attorney-client privilege.

COUNSEL: [*1] For KLAUS RENNER, plaintiff: Robert L. Herbst, Herbst & Greenwald LLP, New York, NY.

For TOWNSEND FINANCIAL SERVICES CORP., TOWNSEND INVESTMENT FUND, LLC, GERALD TOWNSEND, defendants: Richard J. DeMarco, Jr., Reed, Smith, Shaw & McClay, L.L.P., Scott Stephen McKessy, Reed Smith LLP, New York, NY.

JUDGES: CHARLES S. HAIGHT, JR., SENIOR UNITED STATES DISTRICT JUDGE.

OPINION BY: CHARLES S. HAIGHT, JR.

OPINION

MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge:

Plaintiff, a citizen and resident of Switzerland, brought this diversity action after defendants allegedly defrauded him out of $ 3 million.

Presently before the Court is a motion by the Townsend defendants for a ruling that certain communications be protected from discovery by the attorney-client privilege, and a cross-motion by the plaintiff for a ruling that the crime-fraud exception precludes defendants' assertion of that privilege with respect to the communications in dispute.

For the reasons that follow, the Court directs the Townsend defendants to submit to the Court for *in camera* inspection all documents withheld from discovery on the basis of attorney-client privilege.

BACKGROUND

The complicated history of this heavily litigated action is detailed in two previous opinions of this Court. *Renner v. Chase Manhattan Bank*, 1999 U.S. Dist. LEXIS 978, 98 Civ. 926, 1999 WL 47239 (S.D.N.Y. Feb. 3, 1999)("Renner I"); *Renner v. Chase Manhattan Bank*, 2000 U.S. Dist. LEXIS 8552, 98 Civ. 926, 2000 WL 781081 (S.D.N.Y. June 16, 2000) [*2] ("Renner II"). Familiarity with these opinions is assumed.

Renner, a self-described engineer and inventor, has pursued his action against the defendants for the loss of $ 3 million he alleges was taken from him by fraud. After plaintiff's original complaint, alleging numerous causes of action under common law, federal securities law, and the RICO statutes, was dismissed in its entirety against Chase Manhattan Bank ("Chase"), *see Renner I*, a first amended complaint was filed in April of 1999. In a subsequent opinion, *see Renner II*, the Court dismissed the majority of causes of actions alleged by the plaintiff, but allowed the claims for fraud and commercial bad faith to go forward. In that opinion the claims against defendants Chase and Morelli were dismissed in their entirety. In an Order dated January 23, 2001, the Court granted the plaintiff the right to file a second amended complaint, filed February 5, 2001, and it is under that pleading that the case continues.

By the beginning of 2001 it was made clear to the Court, through numerous correspondences from counsel to Chambers, that significant disputes over discovery required the Court's intervention. On February 27, 2001 the [*3] Court issued an Order requiring the parties to submit to the Court and exchange, by March 13, 2001,

2001 U.S. Dist. LEXIS 9766, *

Page 3

attorney-client privilege and the crime-fraud exception before ruling on the question of disqualification.

[HN1] By its nature, the crime-fraud *exception* can only apply, if it applies at all, to instances where the attorney-client privilege itself is first established. *See United States v. Jacobs*, 117 F.3d 82, 86 (2d Cir. 1997)("crime-fraud exception *removes the privilege* from those attorney-client communications...")(emphasis added); *Boss Manufacturing Co. v. Hugo Boss AG*, 1999 U.S. Dist. LEXIS 8495, 97 Civ. 8495, 1999 WL 47324 at *1 (S.D.N.Y. Feb. 1, 1999)(court determined first, following Magistrate [*6] Judge Dolinger's *in camera* inspection, that the privilege applied, and, second, upon further inspection, that the crime-fraud exception did not apply). For that reason the Court must decide whether the attorney-client privilege applies to the communications withheld by the Townsend defendants before addressing the crime-fraud exception's applicability.

[HN2] The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 66 L. Ed. 2d 584, 101 S. Ct. 677 (1981). The standards applicable to a claim of attorney-client privilege are well settled.

To invoke the attorney-client privilege, a party must demonstrate that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice.

*United States v. Construction Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir.), *cert. denied*, 519 U.S. 927, 136 L. Ed. 2d 213, 117 S. Ct. 294 (1996). The burden of sustaining the privilege is on its proponent, here the [*7] Townsend defendants. 6 *Moore's Federal Practice* § 26.49[1] (3d Edition 2000); *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir.), *cert. denied*, 481 U.S. 1015, 95 L. Ed. 2d 498, 107 S. Ct. 1891 (1987).

According to the defendants, Clark first "advised" Townsend on December 29, 1995, after being introduced to Townsend by Charlie Weaver, a mutual acquaintance. Townsend Defendants' Memorandum of Law Regarding Advice Provided to Defendants by Donald Clark, Esq. ("Townsend Defendants' Memorandum") at 1. Clark again "represented" Townsend in April 1996. Id. at 1. Defendants' Privilege Log, submitted pursuant to Local Rule 26.2 and this Court's Order, Renner III at *3, indicates that correspondence between Clark and Townsend, which defendants contend to be privileged, continued through the remainder of 1996 and into 1997. The Town-

1 According to the plaintiff, a dispute concerning the representation of the defendants by Clark and his employer firm Reed Smith has arisen due to the following: (1) Townsend's refusal to answer certain questions asked of him at his deposition with respect to communications he had with Clark about, one, the structure of Townsend's relationship with Hampstead and, two, an SEC inquiry; (2) the Townsend defendants' withholding of documents based on claims of privilege; (3) document requests from the plaintiff to Clark to which no response has been received. *See* Plaintiff's Memorandum of Law in Support of Plaintiff's Cross-Motion for a Ruling by the Court Regarding the Applicability of the Crime-Fraud Exception ("Plaintiff's Memorandum") at 1-2.

[*5] As previously stated, "the Townsend defendants' ability to invoke the attorney-client privilege is inextricably intertwined with the issue of disqualification." *Renner III*, 2001 WL 388044 at *1. This is because the "principal basis for plaintiff's disqualification motion, derived from Disciplinary Rule 5-102, is that Mr. Clark ought to be called as a trial witness on significant issues." *Id.* at *1. Whether or not Clark can be a meaningful witness depends upon whether the privilege applies. For that reason, the Court must first address the issues of

further representing the Townsend defendants.

The two disputes to which I refer regard (1) Renner's argument that the attorney-client privilege invoked by defendants ought not to apply [*4] because the contested communications constituted non-legal advice outside the context of an attorney-client relationship, and alternatively, that the communications are otherwise excepted from the privilege by the crime-fraud exception '; and (2) that Clark and Reed Smith must be disqualified from

After reading the omnibus submissions, it became apparent to the Court that attention needed to be focused upon "two particular disputes, and that consideration of the remaining disputes should be deferred until the Court has resolved those two disputes." *Renner v. Chase*, 2001 U.S. Dist. LEXIS 4634, *1-2, 98 Civ. 926, 2001 WL 388044 at *1 (S.D.N.Y. April 17, 2001)("Renner III").

case, by Order dated April 3, 2001.

"simultaneous omnibus" discovery reports, listing all remaining documents and third party witnesses which the parties felt entitled to discover or depose, a summary of any possible dispute regarding attorney Donald Clark, counsel for the Townsend defendants, and his law firm, Reed Smith L.L.P. ("Reed Smith"), and any other requests by the parties made in furtherance of preparing the case for trial. During the Court's consideration of these submissions all further discovery, including the then scheduled deposition of Clark, was suspended in the

2001 U.S. Dist. LEXIS 9766, *

send defendants also assert privileged status for a number of documents created in 1998, the year in which Renner filed this action against them, and for phone conversations between either Clark and Townsend or Clark and Weaver during 1995 and 1996. Later, according to the defendants, Townsend asked Clark [*8] to represent him in this matter, and Clark, along with other attorneys at Reed Smith, Clark's employing firm, continue to do so.

Defendants allege that the 1995 meetings between Clark and Townsend were for the "sole purpose of seeking legal and tax advice relating to the structure of an anticipated joint venture," and that the advice given thereafter related to, variously, "an inquiry by the Securities and Exchange Commission," as well as "a NASD net capital disciplinary proceeding," and "representation in defense of a lawsuit regarding a promissory note." Townsend Defendants' Memorandum at 3, and fn. 3. The defendants emphasize that "the advice in question was sought solely for legal, not business purposes.", Id. at 5. Indeed, [HN3] if such correspondence and oral communication were legal in nature and between client and counsel, as intended, and kept confidential, as intended, the attorney-client privilege would presumptively apply.

The plaintiff argues that the nature of the relationship between Clark and Townsend was not one of attorney-client. Though the plaintiff, in his filings with the Court and at oral argument, focuses almost exclusively on his claim that the crime-fraud [*9] exception applies to any claimed privileged material, the plaintiff also disputes that any privilege attached to the communications, both because the advice was non-legal in nature, and because an attorney-client relationship did not exist.

The evidentiary basis for plaintiff's claim consists primarily of facts alleged by the plaintiff, and discussed at length in two previous opinions. Renner I, 1999 WL 47239 at **1-3; Renner II, 2000 WL 781081 at **1-4. For present purposes it is sufficient to say that in August 1995 Townsend entered into an "Asset Management Contract" with Hampstead Trust, Ltd. ("Hampstead") to become its U.S. broker-dealer to facilitate that entity's trading. Hampstead was an entity controlled by Dr. Gustav Susse and Rabon Wolford, neither of whom is currently a party to this action, that the plaintiff argues was a sham organization engaged solely in the business of fraud. In early 1996 the plaintiff became involved with Susse and agreed, pursuant to a written contract, to invest $ 3 million with Hampstead. According to the plaintiff, that $ 3 million was never invested by Hampstead but was, after its receipt by Townsend, redirected [*10] by him, "within a week," and withdrawn for personal use by Susse and others involved with Hampstead. Transcript of Oral Argument, May 2, 2001 ("Transcript") at 14. According to plaintiff, after his inquiries, he was reassured

by Townsend that his money was secure when Townsend knew that it was not. In April of 1996, as communications between Townsend and Clark resumed, the SEC began an investigation into the Hampstead activities. Throughout the following months, all of Renner's inquiries concerning his funds went unanswered, and in 1998 Renner filed a lawsuit.

It is the plaintiff's contention, made without the benefit of knowing the contents of the communications which the Townsend defendants allege to be privileged, that the communications were not made for the purpose of giving legal advice, and that no attorney-client relationship existed. Plaintiff suggests that the relationship between Clark and Townsend was not that of attorney and client, and that the advice given pertained to the Townsend defendants' non-legal arrangements with Susse and Hampstead.

After considering the submissions of the parties, the Court concludes that in camera review of the communications is necessary [*11] to decide whether the attorney-client privilege attaches to each such communication yet non.

The Townsend defendants concede, and the Court has recognized, that fraud was committed by Gustav Susse and the Hampstead entity he controlled. See Transcript at 33 (counsel for Townsend defendants: "that there was fraud by Gustav Susse, and the Court has recognized that and we certainly recognize that"). The extent to which the Townsend defendants are implicated in such fraud remains to be seen. The communications withheld on the basis of attorney-client privilege may clarify that question, or they may not. They may be privileged or they may not. The Townsend defendants themselves stated at oral argument that while they do not concede plaintiff has made a showing sufficient to "trigger" such an in camera review based upon the assertion of the crime fraud exception," they "would be pleased to have the Court at this stage look at any of the documents, question in camera Mr. Clark, question in camera Mr. Townsend....". Transcript at 32. By "this stage" the Court assumes counsel meant the stage we are at today, namely, determining the applicability of the asserted privilege.

[HN4] Use of [*12] in camera review of documents to determine the applicability of the attorney-client privilege is common practice in circumstances such as this. As the Supreme Court has stated, "this Court has approved the practice of requiring parties who seek to avoid disclosure of documents to make the documents available for in camera inspection, see Kerr v. United States District Court for Northern District of Cal, 426 U.S. 394, 404-405, 48 L. Ed. 2d 725, 96 S. Ct. 2119 (1976), and the practice is well established in federal

Page 4

courts.'" *United States v. Zolin*, 491 U.S. 554, 568-69, 105 L. Ed. 2d 469, 109 S. Ct. 2619 (1989). *See, e.g., Strougo v. Bea Associates*, 199 F.R.D. 515, 522 (S.D.N.Y. 2001)(after "viewing the documents in camera," holding that only some communications withheld were entitled to attorney-client privilege); *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 54 (S.D.N.Y. 2000)(the court "having reviewed in camera the documents withheld from defendants, denies plaintiffs' assertion of attorney-client privilege..."). Here, the plaintiff has not specifically requested such *in camera* review [*13] to determine the privilege question, but it is apparent to the Court that an informed determination can be made only after reviewing the communications in question. An *in camera* review is appropriate where, as here, there has been at least some showing, however preliminary and indeterminative, that these communications may not be protected by the attorney-client privilege.

The Court therefore Orders *sua sponte* that the Townsend defendants submit to the Court for *in camera* inspection full, complete and accurate copies of all documents withheld on the basis of attorney client privilege. That submission to the Court must be made to Chambers, Room 1940, 500 Pearl Street, on or before July 26, 2001. The documents need not be presented to the Clerk for docketing at this time. Copies need not be delivered to counsel for plaintiff, pending the Court's further Order. Rulings on the Townsend defendants' motion and Renner's cross-motion are deferred until after the Court's inspection.

To clarify, this review will not be for the purpose of deciding whether the crime-fraud exception applies. Instead, it is for the limited purpose of deciding the applicability of the attorney-client [*14] privilege. Only if the Court decides that the privilege does apply would the Court consider further examination of the privileged communications on the question of the crime-fraud exception, and only after determining that plaintiff had made the necessary showing, under the standards set forth in Zolin and Jacobs, to trigger a second *in camera* review.

It is SO ORDERED.

Dated: New York, New York

July 11, 2001

CHARLES S. HAIGHT, JR.

SENIOR UNITED STATES DISTRICT JUDGE